[No. B079794. Second Dist., Div. Six. Nov. 21, 1995.]

SHELDON WHITEHOUSE, Plaintiff and Respondent, v.
SIX CORPORATION et al., Defendants;
SAMMY JO REEDER et al., Third Party Claimants and Appellants.

530

**COUNSEL**

David J. Gallo and Michael P. Fedynyshyn for Third Party Claimants and Appellants.

Andre, Morris & Buttery and James C. Buttery for Plaintiff and Respondent.

No appearance for Defendants.

**OPINION**

**GILBERT, J.**—A creditor attaches real property. The party claiming ownership of the property asserts a third party claim pursuant to Code of Civil Procedure section 720.110 et seq.[1] The third party has the burden of proving an interest in the subject property by a preponderance of the evidence. (§ 720.360.)

We hold that when a creditor resists the claim by asserting the property has been fraudulently transferred to the third party, the creditor must prove this allegation by a preponderance of the evidence.

FACTS

On December 18, 1991, respondent, American Universal Insurance Company (American) brought an action against Hill Top Developers Inc., Six

---

[1]Hereafter, all statutory references will be to the Code of Civil Procedure unless otherwise indicated.

Corporation, and One Hundred Thirteen Corporation, seeking the judicial foreclosure and sale of three parcels of secured realty, a mini-mart and two apartment houses. It also sought recovery of any deficiency.[2]

At the time the action was filed, all of the stock in Hill Top was owned by Sammy Jo Reeder, appellant, and Wayne Reeder, her husband at the time. Appellant, Interstate Underground Warehouse & Industrial Park, Inc. (Interstate), is a wholly owned subsidiary of Hill Top. Each spouse possessed a one-half interest in Hill Top. The Reeders dissolved their marriage on May 4, 1992.

On December 2, 1992, American, acting through its receiver, moved for a prejudgment order of attachment for all property of Hill Top and RHI (formerly One Hundred Thirteen Corporation). (§ 483.010.) In support of its application, American argued that the value of its secured interest in Hill Top's realty was declining, and it was probable the validity of its claims would be upheld.

On February 26, 1993, the trial court granted American a writ enabling it to attach "[a]ll property of Defendant Hill Top Developers, Inc." American recorded the writ of attachment against the three subject properties.

Meanwhile, through a series of transactions, which included a property settlement agreement, Hill Top transferred its interest in the three properties to appellants Sammy Jo Reeder and Interstate. Two of the deeds transferring these properties were dated June 1991, but were not recorded until March and April 1992. The other deed was dated January 1992, but not recorded until December 1992.

On June 17, 1993, the parties in the underlying action entered into a stipulation allowing for entry of judgment in favor of American and against Hill Top and RHI in the sum of $78,154,937.68, and directing the foreclosure sale of a secured parcel of realty located in Riverside County. Judgment was duly entered by the trial court.

On July 14, 1993, appellants filed a third party claim of ownership in the subject parcels. (§§ 720.110, 720.130.) In the claim, Ms. Reeder and Interstate alleged that they had lawfully acquired title to these parcels.

In response, American challenged the claim of appellants' ownership upon the grounds that the transfers of the properties from Hill Top to appellants

---

[2]In 1992, American Universal Insurance became insolvent and a receiver, Sheldon Whitehouse, was appointed by the State of Rhode Island to act as its receiver. The Rhode Island Superior Court declared that receiver was the lawful holder of the note and was directed by the court to liquidate all of American's liquid assets.

were fraudulent. (Civ. Code, § 3439 et seq.) It petitioned for a hearing on the claim.

Appellants claimed American was attempting to prosecute a fraudulent transfer action by way of summary third party proceedings. In addition, they requested a continuance so that they could conduct discovery. They also sought to withdraw their third party claim. The trial court denied these requests.

Appellants also protested that the summary third party claim procedures unlawfully deprived them of their right to a trial by jury. The trial court, however, set the matter for hearing, which began on September 9, 1993.

Ms. Reeder, appellants' lone witness at the hearing, testified that she had acquired the two apartment houses pursuant to a divorce settlement, and that she purchased an undivided one-half interest in the third parcel, the mini-mart, from Hill Top for $100,000. She had no explanation why the deed to the mini-mart was dated five months before she signed the check. Nor could she explain other peculiarities surrounding the transaction.

John Booker, American's manager of administration, testified that, as of the date of the transfers, Hill Top owed American the. sum of $65,250,504.84.

American requested that the trial court take judicial notice of the declarations of four appraisers, previously filed in the foreclosure action. Two of these declarants attested to the value of the secured property. Appellants objected upon the grounds that they were "totally surprised" by this evidence; that they were being denied the right to cross-examine the declarants; and that the declarations were hearsay.

The trial court found that the declarations were admissible for the limited purpose of showing the foundational basis for the writ of attachment, and overruled the objections. It also denied appellants' request that they be granted a three-month continuance so that they might obtain their own expert testimony in rebuttal.

On September 14, 1993, the trial court announced its decision to deny the third party claim. It found that appellants had failed to sustain their burden of proof on the validity of their claims. Reeder and Interstate appealed this ruling.

## DISCUSSION

### I.

A writ of attachment allows a plaintiff, in certain prescribed instances, to obtain a pretrial seizure of the property of a defendant-debtor. (*Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 543 [96 Cal.Rptr. 709, 488 P.2d 13].) A plaintiff who suspects that the defendant-debtor has fraudulently transferred assets in order to become judgment proof may also enforce its claim against the transferred property by way of a writ of attachment. (Civ. Code, § 3439.07, subds. (a)(2), (b); see also Schwartz & Ahart, Cal. Practice Guide: Enforcing Judgments and Debts 1 (The Rutter Group 1994) ¶ 3:342, p. 3-70.5; *id.*, ¶ 4:96, p. 4-20.)

The transferee of the attached property may protect its interest by filing a third party claim. (§ 720.110 et seq.; *Regency Outdoor Advertising, Inc.* v. *Carolina Lanes, Inc.* (1995) 31 Cal.App.4th 1323 [37 Cal.Rptr.2d 552].) The property may be personal or real. (§ 720.110, subds. (a), (b).) Upon the filing of this claim, the attachment will be automatically released unless the creditor either: (1) posts a sufficient undertaking (§ 720.160); or (2) petitions the court for a hearing and applies for an ex parte restraining order (§§ 720.310, 720.380, subd. (b)).

### II.

Appellants contend that the trial court improperly placed the burden of proof upon them to establish that the challenged transfers were bona fide. They argue that in an action to establish a fraudulent transfer, the plaintiff creditor must prove the transferor's intent by clear and convincing evidence. (See *Reddy* v. *Gonzalez* (1992) 8 Cal.App.4th 118, 123 [10 Cal.Rptr.2d 55]; (*Aggregates Associated, Inc.* v. *Packwood* (1962) 58 Cal.2d 580, 587-588 [25 Cal.Rptr. 545, 375 P.2d 425].)[3]

In *Liodas* v. *Sahadi* (1977) 19 Cal.3d 278, 292-293 [137 Cal.Rptr. 635, 562 P.2d 316], our Supreme Court disapproved the dictum in *Aggregates* that

---

[3]In 1986, California's old Uniform Fraudulent Conveyance Act was replaced by the Uniform Fraudulent Transfer Act found in sections 3439 through 3439.12 of the California Civil Code. Civil Code section 3439.04 provides, "A transfer made . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer . . . as follows: [¶] (a) With actual intent to hinder, delay, or defraud any creditor of the debtor."

Civil Code section 3439.05 provides in pertinent part: "A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . ."

said fraud must be proved by clear and convincing evidence. The *Liodas* court stated the well-established rule that fraud must be proved by a preponderance of the evidence. (*Ibid.*) ■ Appellants are correct, however, in stating that the creditor has the burden of proof to establish a fraudulent transfer. (*Id.* at pp. 291-292.)

If the creditor shows that a conveyance made by a debtor is presumptively fraudulent because it has been made without fair consideration, the burden shifts to the party defending the transfer. (See *Neumeyer* v. *Crown Funding Corp.* (1976) 56 Cal.App.3d 178, 190 [128 Cal.Rptr. 366].)

■ American points out section 720.360 provides that in a third party claim proceeding "the third person has the burden of proof." (See *Chrysler Credit Corp.* v. *Superior Court* (1993) 17 Cal.App.4th 1303, 1312-1313 [22 Cal.Rptr.2d 37].) Therefore, it argues that appellants may not rely on the general rule governing the burden of proof in fraudulent transfer actions.

But a party filing a third party claim does not waive the legal requirements of a particular theory a creditor resisting the claim may wish to advance. Section 720.360 was never intended to abrogate the well-established rule concerning the burden of proof required in fraudulent transfer actions. Without specifically saying so, the Legislature would not have repealed this long-standing rule merely because a fraud action is tried within the framework of a third party claim proceeding. (*Ultramar, Inc.* v. *South Coast Air Quality Management Dist.* (1993) 17 Cal.App.4th 689, 710 [21 Cal.Rptr.2d 608].)

In support of its theory, American contends that a trial court does not determine ultimate ownership of the property, but determines only whether third parties have established their claim.

This contention overlooks the plain meaning of the statute: the judgment of the trial court *conclusively* established which of the parties had the right to ultimately dispose of the properties. (Italics added.) Section 720.390 provides: "At the conclusion of the hearing, the court shall give judgment determining the validity of the third-party claim and may order the disposition of the property or its proceeds in accordance with the respective interests of the parties. . . . [T]he judgment is *conclusive between the parties to the proceeding.*" (Italics added; see also *Regency Outdoor Advertising, Inc.* v. *Carolina Lanes, Inc., supra,* 31 Cal.App.4th 1323, 1329; Schwartz & Ahart, Cal. Practice Guide: Enforcing Judgments and Debts 2, *supra,* ¶ 6:1688, p. 6H-17.)

The trial court could not make a conclusive determination as to the validity of appellants' third party claim of ownership without deciding American's contention that the transfers were fraudulent and should therefore be set aside. In short, once American raised the specter of Hill Top's duplicitous transfers, the trial court could not avoid deciding the ultimate issue of ownership.

The third party claim proceeding is an arena within which a variety of legal issues may be decided according to a variety of legal theories. A creditor wishing to pursue a fraudulent transfer theory may not escape the burden of proving its claim merely because the contest is played out in a third party claim proceeding.

The third party claimant is required to introduce evidence that it owns the attached property. (*Lawler* v. *Solus* (1951) 101 Cal.App.2d 816, 818 [226 P.2d 348].) Once the third party accomplishes this, the burden shifts to the creditor to establish that the transfers represented by the deeds were fraudulent. (*Chrysler Credit Corp.* v. *Superior Court, supra,* 17 Cal.App.4th at pp. 1313-1314.) Because here the trial court did not shift the burden of proof to the creditor, we must reverse.

## III.

Appellants urge a reversal of wider scope, one that frees them completely from the confinement of the third party claim proceeding. They contend that having to defend a fraudulent transfer action gives them the right to discovery and to a jury trial. They would be entitled to these rights in an action at law, but they are specifically excluded in a third party claim proceeding.

Generally, there is no opportunity for discovery. Section 720.310, subdivision (c), provides that a "hearing shall be held within 20 days after the filing of the petition unless continued by the court for good cause shown." No findings are required (§ 720.400), and there is no right to a jury trial (§ 720.410).

Appellants claim they did not waive these rights because they did not receive notice of respondent's fraudulent transfer claim until the date first set for the hearing on the third party claim. The matter was then continued to give the parties the opportunity to brief the issue of whether the court could

adjudicate a fraudulent transfer claim using the summary procedures of a third party claim proceeding. On the day set for hearing, appellants were, at best, prepared to offer their claim to ownership of the properties.

Appellants complain the trial court abridged their constitutional right of due process by refusing to grant them an opportunity to conduct discovery. They had only 64 days after service of respondent's petition for a hearing in which to prepare, and this was insufficient time to prepare for the hearing. For example, they wished to depose Wayne Reeder in order to elicit testimony from him that Hill Top was solvent at the time of the questioned transfers and that it had received equivalent value in exchange for the transfers.

The general rule is that discovery is not available in those proceedings in which a creditor seeks to enforce a judgment. (§ 2016, subd. (c).)[4] In short, there is no provision in the Civil Discovery Act of 1986 that would allow the third party claimant to conduct discovery.

Appellants also claim they are entitled to a jury trial. They rely on *Granfinanciera* v. *Nordberg* (1989) 492 U.S. 33 [106 L.Ed.2d 26, 109 S.Ct. 2782]. The Supreme Court acknowledged "scholarly support" for the claim that actions to recover real property are equitable in nature for which there is no right to a jury trial. (*Id.* at pp. 45-47, fn. 5 [106 L.Ed.2d at p. 43].) The court, however, cited the hoary case of *Whitehead* v. *Shattuck* (1891) 138 U.S. 146, 151 [34 L.Ed. 873, 874, 11 S.Ct. 276], for the proposition that actions to recover real property are actions at law to which both parties have a right to a jury trial.

We need not resolve this intriguing issue because appellants chose the third party claim procedure. Appellants selected this expeditious and relatively inexpensive procedure to clear title in preference to other equitable and legal remedies, e.g., an action to quiet title, injunctive relief, declaratory relief, a suit for damages, or a suit to recover possession of the property. (See *Regency Outdoor Advertising, Inc.* v. *Carolina Lanes Inc.*, *supra*, 31 Cal.App.4th at p. 1329; Schwartz & Ahart, Cal. Practice Guide: Enforcing Judgments and Debts 2, *supra*, ¶ 6:1607, p. 6H-2.)[5]

---

[4]Judgment creditors are permitted to engage in limited discovery from debtors in the form of interrogatories and demands for inspection of documents. (§§ 708.020 and 708.030.)

[5]"[B]efore filing the claim, the third party's attorney should disclose the expense and risk involved—e.g., explain that the court may summarily determine the claim if the judgment creditor contests it, and such determination is binding on the third party." (Schwartz & Ahart, Cal. Practice Guide: Enforcing Judgments and Debts 2, *supra*, ¶ 6:1614., p. 6H-3.)

Concerning limitations as to discovery and the right to a jury trial, the creditor is in the same position as the third party claimant. In some cases, such a position may be even more disadvantageous.

It is not uncommon in the practice of law to sacrifice certain rights in order to obtain others. A litigant may effectively waive certain constitutional and procedural rights by choosing an alternative forum that provides an expeditious and inexpensive means of resolution of a case.

The most obvious examples are contractual agreements to use arbitration instead of the courts to resolve disputes. (See *Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899]; *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 713 [131 Cal.Rptr. 882, 552 P.2d 1178].) Another example is the small claims court where, in exchange for speedy, inexpensive procedures, a plaintiff waives his or her right to discovery, right to an attorney, damages in excess of $5,000, trial by jury, and appeal. (*Jellinek* v. *Superior Court* (1991) 228 Cal.App.3d 652, 656-657 [279 Cal.Rptr. 6]; *Parada* v. *Small Claims Court* (1977) 70 Cal.App.3d 766, 769 [139 Cal.Rptr. 87]; *Cook* v. *Superior Court* (1969) 274 Cal.App.2d 675, 677-678 [79 Cal.Rptr. 285].) Other examples would include stipulating to trial before a temporary judge (*In re Marriage of Crook* (1991) 235 Cal.App.3d 30, 32-33 [286 Cal.Rptr. 537]), and waiving excess damages and proceeding in the municipal court. (*Babcock* v. *Antis* (1979) 94 Cal.App.3d 823 [156 Cal.Rptr. 673].)

Nor are there any constitutional defects in the summary proceedings. ▉ "The general application of due process principles is flexible, depending upon the nature of the competing interests involved." (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 617 [156 Cal.Rptr. 718, 596 P.2d 1134].) It requires that a party: (1) be duly advised of the claim against him or her; (2) be afforded a reasonable opportunity to prepare and present a defense at a hearing. (*Fuentes* v. *Shevin* (1972) 407 U.S. 67, 80-82 [32 L.Ed.2d 556, 569-571, 92 S.Ct. 1983]; *Isbell* v. *County of Sonoma* (1978) 21 Cal.3d 61, 68 [145 Cal.Rptr. 368, 577 P.2d 188].) "The touchstone of due process is fundamental fairness." (*Salas* v. *Cortez,* (1979) 24 Cal.3d 22, 27 [154 Cal.Rptr. 529, 593 P.2d 226].) ▉ The procedure appellants have elected meets the test of fundamental fairness. By requiring the creditors to prove a fraudulent transfer by a preponderance of the evidence, the third party claim proceeding meets the test of due process.

## IV.

▉ Appellants wish to explore other avenues to assert their ownership in the property. They argue the trial court erred when it denied their motion to dismiss their third party claim.

Section 720.370 states: "If the petition for a hearing was made by the third person, neither the petition nor the proceedings pursuant thereto may be dismissed without the consent of the creditor. If the petition for a hearing was made by the creditor, neither the petition nor the proceedings pursuant thereto may be dismissed without the consent of the third person."

In response to appellants' third party claim, American filed a petition for hearing. It is American who has the power to dismiss its petition, but only with the consent of appellants. A third party claim proceeding has its peculiarities, but as American points out it resembles other types of proceedings in that only the party who initiates the proceeding may dismiss it.

■ Litigants who choose to travel the express route by way of a third party claim procedure may not suddenly transfer to the more traditional, less expeditious route. There are no exits. By choosing the third party claim form of adjudication, appellants were provided with a relatively inexpensive and speedy determination of their claim vis-à-vis American's attachment.

## V.

■ Next, appellants argue that the trial court erred in taking judicial notice of the appraisers' declarations offered in support of the value of two of the secured parcels. (See *Ramsden v. Western Union* (1977) 71 Cal.App.3d 873, 879 [138 Cal.Rptr. 426].)

We agree that these declarations were hearsay. These were declarations of appraisers estimating the value of the secured properties which were the subject of the judicial foreclosure action. These declarations had been previously offered by American in its action against Hill Top to establish that approximately $25 million of its loan were presently unsecured.

On remand, the trial court may not take judicial notice of hearsay allegations contained in a document merely because the document is part of a court file. (See *Ramsden v. Western Union, supra*, 71 Cal.App.3d 873, 879.)

The order is reversed. The parties to bear their own costs.

Stone (S. J.), P. J., and Yegan, J., concurred.

On December 19, 1995, the opinion was modified to read as printed above. A petition for a rehearing was denied December 19, 1995, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied March 14, 1996.