Filed 11/22/13  Garcia v. Palmer CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LETTY GARCIA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARL W. PALMER,<br><br>    Defendant;<br><br>SEYCHELLE ENVIRONMENTAL TECHNOLOGIES, INC.,<br><br>    Third Party Claimant and Appellant. | D062116<br><br><br><br><br><br>(Super. Ct. No. GIC824457) |


APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Paul J. Shardlow for Third Party Claimant and Appellant Seychelle Environmental Technologies, Inc.

Griswold Law and Richardson C. Griswold for Plaintiff and Respondent Letty Garcia.

Letty Garcia levied funds in the name of Seychelle Environmental Technologies, Inc. (Seychelle) to satisfy a judgment she obtained against the company's principal, Carl Palmer. Seychelle appeals a judgment denying its third party claim to the funds. Seychelle contends Garcia's action was time-barred, she did not submit substantial evidence to support a finding of Palmer's insolvency, and the trial court violated its due process rights by not compelling her attorney to appear at deposition to answer questions about the authenticity of a copy of an aircraft loan application by Palmer, which the attorney attached to his declaration. Additionally, Seychelle moves for summary reversal of the judgment, claiming a new complaint Garcia filed against it and others abandons the theory under which she prevailed in this action. We deny the motion and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Seychelle is a publicly traded company in the water filtration field, and Palmer is the company's president, CEO, and one of three directors. In June 2005 Garcia obtained a $191,169.71 judgment against Palmer on a complaint arising from an accident with an electric scooter. The jury determined Palmer sold the scooter to Garcia and he was negligent in supplying or inspecting the product, but it rejected the argument Seychelle was liable under a respondeat superior theory.

In May 2011 Garcia applied ex parte for an order for levy on property standing in the name of Seychelle and Pacific Financial Corp. (Pacific). The application alleged Palmer controlled Seychelle, Pacific, and the TAM Trust, which is a majority shareholder

2

of Seychelle. Palmer's daughter, Cari Beck, was trustee of the TAM Trust.[1] The application alleged Palmer and these entities were involved in a scheme to assist him in obtaining funds from Seychelle to cover his expenses while giving the appearance he had no assets with which to satisfy Garcia's judgment. The court granted the application and issued an order for levy on any and all accounts in Seychelle's name necessary to satisfy Palmer's debt, which, with interest and costs had risen to over $300,000. (Code Civ. Proc., §§ 699.030, 700.160, subd. (a).)

Several months later, Seychelle asserted a third party claim of ownership of the levied funds totaling $302,796.23. (Code Civ. Proc., § 720.110, et seq.) Seychelle denied receiving notice of the ex parte application, or that any of the funds belonged to Palmer. Palmer submitted a declaration that stated he held a volunteer position with Seychelle and his title of president was merely honorary. He donated patents to Seychelle, but received no royalties on them and he was not a shareholder of Seychelle. In his 18 years with the company he never received a salary or other remuneration with the exception of the reimbursement of some travel expenses and none of the funds in Seychelle's accounts belonged to him. Seychelle also submitted the declaration of Richard Parsons, its executive vice president since 2004, which essentially stated the same information.

---

[1] Palmer testified the TAM Trust was an irrevocable family trust he set up and it obtained 44 percent of the stock in Seychelle in exchange for making loans to the company. He testified that Pacific was "just a small shell for a checking account," and he received payments for his services from Seychelle made out to Pacific rather than himself.

In opposition, Garcia's attorney submitted a declaration that stated he spoke directly to Palmer on the phone and gave him notice of the ex parte hearing. Garcia pointed out that Seychelle's Web site stated Palmer "has been the President, CEO and a director of the Company since January 1998." Garcia also submitted evidence that in 2009 and 2010 Palmer approved Seychelle's payment of monthly "stipends" to the other two directors of Seychelle and to Pacific, of which he is the president.

In its trial brief, Seychelle argued Garcia's attempt to levy under an alter ego theory was barred by *Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510. As a matter of first impression in California, *Postal* rejected the notion "the corporate veil may be pierced in reverse so that a corporation may be held liable for the debts or conduct of a shareholder." (*Id.* at pp. 1518, 1519-1521.)

At the end of trial, Garcia conceded she could not proceed on an alter ego theory. She argued instead that the Uniform Fraudulent Transfer Act (UFTA) (Civ. Code, § 3439 et seq.)[2] applied, and she should prevail because she proved Palmer "fraudulently transferred assets, benefits and services to Seychelle," and "Palmer with Seychelle's consent, conspired to carefully provide a structure under which [he] would forgo any direct compensation or benefit in return from Seychelle."

---

2    Further statutory references are to the Civil Code unless otherwise specified.

4

The court issued a statement of decision finding in Garcia's favor on the fraudulent transfer theory.[3]  The court determined Garcia satisfied her burden of presenting evidence "Palmer intentionally foregoes payment of money from Seychelle he otherwise would have an interest in and deliberately chooses to have the payments held back and maintained by Seychelle in an effort to avoid payment of debts."

The court found that Seychelle and Palmer entered into an employment agreement in 2001, under which he was to receive an annual salary of $10,000 and 1 percent of net profits.  In 2005, Seychelle reported in a Securities and Exchange Commission (SEC) filing that Palmer would not take his salary until Seychelle was profitable.  Seychelle had become profitable but it never paid Palmer his salary or profit percentage.[4]  Seychelle consistently paid Palmer additional compensation, up to $5,000 per month for consulting services.  Seychelle ceased paying him consulting fees after September 2010 even though he continued to provide consulting services.  The court calculated that Seychelle should have paid Palmer $157,028.50 during the relevant time and thus that amount stood in the name of Seychelle and was available to partially satisfy the judgment against Palmer.

---

[3]     Seychelle objected to Garcia's late change of theories, but on appeal it does not challenge the court's reliance on the fraudulent conveyance theory.

[4]     Palmer testified that while Seychelle struggled in its early years it had enjoyed nine profitable quarters.

5

DISCUSSION

I

*Overview of Fraudulent Transfer/Third Party Claim Law*

The UFTA was enacted in 1986. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 664.)

"Under the UFTA, a transfer is fraudulent, both as to present and future creditors, if it is

made '[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor.' (Civ.

Code, § 3439.04, subd. (a).) Even without actual fraudulent intent, a transfer may be

fraudulent as to present creditors if the debtor did not receive 'a reasonably equivalent

value in exchange for the transfer' and 'the debtor was insolvent at that time or the debtor

became insolvent as a result of the transfer or obligation.' (Civ. Code, § 3439.05.)"

(*Mejia v. Reed*, *supra*, at p. 664) "On its face, the UFTA applies to all transfers. Civil

Code [section] 3439.01, subdivision (i) defines '[t]ransfer' as 'every mode, direct or

indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with

an asset or an interest in an asset.' " (*Mejia v. Reed*, at p. 664.)

" '[P]roof of fraudulent intent often consists of "*inferences* from the circumstances

surrounding the transaction." ' " (*Annod Corp. v. Hamilton & Samuels* (2002) 100

Cal.App.4th 1286, 1298.) In determining actual intent, the court may consider any

relevant factors, including "(1) Whether the transfer or obligation was to an insider. [¶]

(2) Whether the debtor retained possession or control of the property transferred after the

transfer. [¶] (3) Whether the transfer or obligation was disclosed or concealed. [¶] (4)

Whether before the transfer was made or obligation was incurred, the debtor had been

sued or threatened with suit. [¶] (5) Whether the transfer was of substantially all of the

6

debtor's assets. [¶] (6) Whether the debtor absconded. [¶] (7) Whether the debtor removed or concealed assets. [¶] (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred. [¶] (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. [¶] (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred. [¶] (11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor." (§ 3439.04, subd. (b).)

"A third person claiming ownership or the right to possession of property may make a third-party claim" when "personal property has been levied upon under a writ of attachment, writ of execution, a prejudgment or postjudgment writ of possession, or a writ of sale." (Code Civ. Proc., § 720.110.) At a hearing on a third-party claim, the third person ordinarily has the burden of proof. (Code Civ. Proc., § 720.360.) "But a party filing a third party claim does not waive the legal requirements of a particular theory a creditor resisting the claim may wish to advance. [Code of Civil Procedure section] 720.360 was never intended to abrogate the well-established rule concerning the burden of proof required in fraudulent transfer actions." (*Whitehouse v. Six Corp.* (1995) 40 Cal.App.4th 527, 534.) "[T]he creditor has the burden of proof to establish a fraudulent transfer." (*Ibid.*) "If the creditor shows that a conveyance made by a debtor is presumptively fraudulent because it has been made without fair consideration, the burden shifts to the party defending the transfer." (*Ibid.*)

7

## II

### *Statute of Limitations*

Seychelle contends Palmer's levy based on fraudulent conveyance was barred by the one-year statute of limitations set forth in section 3440.6. Section 3440.6, however, is inapplicable. It appears in division 4, part 2, title 2, chapter 2, of the Civil Code, which is entitled "Conveyance of Personal Property Without Delivery" and begins with section 3440.

The applicable statute of limitations is set forth in section 3439.09, which appears in division 4, part 2, title 2, chapter 1, of the Civil Code, which is entitled "Uniform Fraudulent Transfer Act" and begins with section 3439. Section 3439.09 expressly applies to an action based on actual intent to defraud under section 3439.04, subdivision (a)(1). The action must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." (§ 3439.09, subd. (a).) Under any circumstance, an action is extinguished if it is not brought within seven years after the transfer was made. (§ 3439.09, subd. (c).)

In her respondent's brief, Garcia alerted Seychelle to the correct statute of limitations. In its reply brief, Seychelle does not suggest section 3439.09 forecloses Garcia's action. It ignores the statute altogether. Thus, Garcia's action was timely under the correct statute of limitations.

8

III

*Insolvency Element*

Additionally, Seychelle challenges the sufficiency of the evidence to prove Palmer's insolvency. "A debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets." (§ 3439.02.) Seychelle criticizes the court for not formally evaluating whether Garcia proved Palmer's debts were greater than his assets in each instance in which Seychelle should have, but did not, make a payment to Palmer. Seychelle asserts, "[s]uch evidence is necessary in order to uphold the verdict."

Garcia, however, argued and proved Palmer transferred property to Seychelle with the *actual intent* to avoid paying her judgment, and thus his insolvency was not a required element of her claim. The court's statement of decision states Garcia "satisfied [her] evidentiary burden by presenting evidence that . . . Palmer intentionally foregoes payment of money from Seychelle he otherwise would have an interest in and deliberately chooses to have the payments held back and maintained by Seychelle in an effort to avoid payment of debts." A claim under subdivision (a)(1) of section 3439.04 "does not require proof of anything more than actual intent to defraud." (*Reddy v. Gonzalez* (1992) 8 Cal.App.4th 118, 123.) Insolvency is but one of numerous factors the court has discretion to consider in determining whether a party acted with actual intent to defraud. (§ 3439.04, subd. (b)(9).)[5]

---

5      Section 3439.05 has an insolvency requirement, but it is inapplicable when the theory is one of actual intent to defraud. Section 3439.05 provides: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the

9

The court's statement of decision does not mention insolvency, and thus we presume it decided the issue on other factors, such as Palmer's close relationship with Seychelle. "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Seychelle does not challenge the sufficiency of the evidence pertaining to any of the other factors set forth in section 3439.04, subdivision (b).

IV

*Aircraft Loan Application*

Seychelle also contends the court erred by not allowing it to conduct discovery on the authenticity of an aircraft loan application Garcia alleged Palmer made. Garcia's attorney, Richardson C. Griswold, submitted a declaration in support of her opposition to Seychelle's third party claims. The declaration states Griswold had personal knowledge of facts stated therein, and attached as exhibit 3 was a "true and correct copy" of a document that showed Palmer owned shares in Seychelle through the TAM Trust.[6] Exhibit 3 is an aircraft loan application, listing Palmer as the applicant and stating his

transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Any reliance of Seychelle on this statute is mistaken.

[6]      Seychelle asserts this information was repeated in a declaration filed by an attorney whose client obtained a judgment against Palmer in an unrelated matter, but that declaration does not mention the aircraft loan application.

employer was Seychelle, he had an annual employment income of $525,000 and a net worth exceeding $12 million as of August 2007, and he owned 13,525,000 shares of Seychelle through "[TAM]," a "family trust."

The court granted Seychelle's request for a continuance of trial to allow it to depose Griswold on his supposed personal knowledge of the loan application. Griswold refused to appear for deposition and Seychelle moved to compel his appearance. The court reportedly denied the motion on the ground Griswold "had no relevant information to provide in a deposition."[7]

At trial, Palmer admitted applying for an aircraft loan, but he denied filling out the loan application. He testified he spoke by phone with a person named David at the lender's office who filled out the application after asking Palmer questions. Palmer testified David made up some of the information on the application. Palmer told David his yearly income was around $120,000, which included social security and his wife's income, and nothing from Seychelle. David said he was "going to put in the numbers to make this qualify." Palmer also denied telling David that he owned any shares in Seychelle. He told David the TAM Trust owned shares in Seychelle, without mentioning a specific number, and David "obviously put [it] in there."

Palmer denied signing the application, but agreed the signature on it "looks a lot like my signature." He testified he saw the application for the first time after he defaulted

---

7      Neither the reporter's transcript from the hearing on the motion to compel nor any written order is included in the appellate record, but this point is undisputed.

11

on the loan and the lender repossessed the plane and obtained a deficiency judgment against him. He had no idea how Garcia obtained a copy of it in this litigation. The court determined Palmer signed the loan application, explaining he "has very little credibility" and "I don't believe a whole lot of what [he] says."[8]

Seychelle asserts the "court's refusal to permit Seychelle to explore the history behind the alleged 'loan application' violated [its] due process rights." Seychelle complains that Garcia "made no effort to authenticate the document" and it was not offered or accepted into evidence. Seychelle cites *Salas v. Cortez* (1979) 24 Cal.3d 22, 27, which states, "The touchstone of due process is fundamental fairness." It also cites *Isbell v. County of Sonoma* (1978) 21 Cal.3d 61, 70, for the proposition due process requires "the opportunity of presenting any defense to the claim."

Any arguable due process error requires reversal when it results in the denial of a fair hearing. (*Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677; *In re A.D.* (2011) 196 Cal.App.4th 1319, 1327 [due process claim subject to harmless error analysis when resort to speculation not required to determine outcome was unaffected].) Seychelle, however, does not show it was denied a fair hearing. Seychelle asserts the court's reliance on the loan application "tainted the entire opinion and judgment of the court," but the statement of decision does not mention the application. Rather, the court's ruling was based on proof Seychelle owed Palmer a salary and a percentage of net profits

---

[8]     Palmer testified that Seychelle did not purchase or finance the airplane, but an SEC filing disclosed Seychelle's "purchase [of] an airplane with debt."

under an employment contract, as well as a monthly "stipend" it stopped paying him. The court's ruling was not based on any information on the loan application, or on Palmer's alleged ownership of Seychelle shares through the TAM Trust. The result would have been the same had the loan application not been discussed, and thus Seychelle's inability to depose Griswold is immaterial. The record shows Seychelle received a fair trial.

Further, we see no due process concern. Seychelle presents no legal authority suggesting the questioning of Palmer on the loan application was improper. "We need not consider an argument for which no authority is furnished." (*Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384.) In any event, contrary to Seychelle's position, the loan application was not a "mysterious unauthenticated document." Rather, Palmer admitted it was made contemporaneously with his application for an aircraft loan. The issue was whether he signed the application and the court rightfully rejected his testimony on the issue. Indeed, the notion that someone from the lender's office, who would not be familiar with Palmer's signature, signed the loan application is far-fetched, as the signature closely matches the signature on several documents Palmer admitted signing. Palmer also testified his signature was forged on an application for a furniture loan that claimed $500,000 in annual income from Seychelle, further adding to his lack of

credibility. It seems implausible that two lenders coincidentally placed income figures in the $500,000 range on applications without Palmer's knowledge.[9]

V

*Motion for Summary Reversal*

Lastly, we dispose of Seychelle's motion "for an order summarily reversing the judgment of the trial court, and ordering the trial court to vacate the judgment appealed from and enter judgment in favor of appellant." Seychelle asserts that a new action Garcia has filed against it, Palmer, and the TAM Trust for fraudulent conveyance and violation of California's Unfair Business Practices Law (Bus. & Prof. Code, § 17200 et seq.), alleges facts showing she has abandoned the theory on which she prevailed in this action, that Seychelle failed to pay Palmer his salary and other funds due to him.

Seychelle cites no legal authority on the remedy of summary reversal, or to support the notion that an appeal may be disposed of on the ground a new complaint alleges facts at odds with the facts supporting the judgment. Thus, we deem the argument forfeited. (*Cahill v. San Diego Gas & Electric Co*. (2011) 194 Cal.App.4th 939, 956 [" 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' "].)

---

[9] Given our holding, we are not required to address the parties' contentions on the availability of discovery in a third party claim proceeding such as this. (See *Whitehouse v. Six Corp., supra,* 40 Cal.App.4th at p. 535 ["Generally, there is no opportunity for discovery."].)

14

Moreover, if a party takes a conflicting position in a new action any remedy would obviously be in that action. In opposing Seychelle's motion, Garcia has provided us with a copy of its demurrer to the new complaint on the ground of judicial estoppel. Seychelle argued the issue of whether it compensated Palmer has already been litigated in this action and Garcia took an inconsistent position in her new complaint. As Garcia notes, Seychelle "is attempting to swiftly wipe out both proceedings."

Moreover, allegations of the new complaint do not appear to conflict with Garcia's position in this litigation. The levy against Seychelle was based on its failure to pay Palmer his $10,000 annual salary and 1 percent of net profits after it became profitable, and its failure to pay him $5,000 in a monthly stipend after September 2010. The new complaint alleges that *part* of Palmer's scheme to avoid paying the judgment involved routing funds Seychelle *actually did pay him* through the TAM Trust, which was controlled by his daughter, to avoid paying the judgment. For instance, the complaint alleges, "the TAM Trust was . . . paid approximately $170,000 in 2010-2011 by Seychelle for alleged 'consulting services.' However, it was confirmed by the CFO of Seychelle . . . during a recent deposition that the 'consulting services' were actually provided by Palmer, but the TAM Trust received payment for those services." The court here noted the evidence indicated Seychelle's payments to the TAM Trust were suspicious, with the company's CFO admitting, "he believes $170,000 paid to the TAM Trust recently was for . . . Palmer." Further, the court noted Palmer has "concocted" a scheme "to avoid paying . . . creditors and paying judgments." The levy against

15

Seychelle only partially satisfies Garcia's judgment and she is merely trying to collect the remainder.

## DISPOSITION

The judgment is affirmed.  Garcia is entitled to costs on appeal.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

AARON, J.