Filed 8/30/21  Westwood Montserrat v. AGK Sierra de Montserrat CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| WESTWOOD MONTSERRAT, LTD., | C088569 |
| Plaintiff, | (Super. Ct. No. SCV0029131) |
| v. | |
| AGK SIERRA DE MONTSERRAT, LP, et al., | |
| Defendants; | |
| AGCPII VILLA SALERNO MEMBER, LLC, as Assignee, etc.; | |
| Defendant and Appellant; | |
| DEBORAH A. WESTWOOOD, Individually and as Trustee, etc., | |
| Third Party Claimant and Respondent. | |

AGCPII Villa Salerno Member, LLC (AGCPII) is the assignee of a money

judgment against Westwood Montserrat, Ltd. (Westwood Montserrat), an entity formed

1

to develop a planned residential community in Placer County.[1]  (*Westwood Montserrat, Ltd. v. AGK Sierra de Montserrat, L.P.* (Sept. 23, 2016, C080395 [nonpub. opn.].)  AGCPII obtained a writ of execution and levied upon a parcel within the planned residential community known as "Lot 26" (sometimes hereinafter referred to as the property).  Deborah Westwood asserted a third-party claim of superior right to the property under a construction deed of trust that was erroneously reconveyed and then reinstated by means of an instrument entitled "Rescission of Substitution of Trustee and Full Reconveyance" (the rescission instrument).[2]  (Code Civ. Proc., § 720.110, et seq.)[3]  The trial court granted Deborah's third-party claim.

AGCPII appeals, arguing (1) the notice of levy has priority over the construction deed of trust because the notice was recorded before the rescission instrument, and (2) AGCPII acquired an interest in the property free and clear of Deborah's interest as good faith encumbrancer for value.  We reject both contentions and affirm.

## I.  BACKGROUND

This appeal is the latest installment in a decade-long battle over Sierra de Montserrat, a planned residential community in Loomis, California.  (*Westwood Montserrat, Ltd. v. AGK Sierra de Montserrat, L.P., supra,* C080395.)  The story begins, for our purposes, with Westwood Montserrat's demand for arbitration against AGK Sierra de Montserrat, L.P., Sierra de Montserrat Owners Association, and Robert C. and Jennielyn B. Kincade (together, the Kincades).  (*Ibid.*)  The arbitrator found Sierra de Montserrat Owners Association and the Kincades to be prevailing parties for purposes of an attorney fees provision in the declaration of covenants, conditions, restrictions, and

---

[1] Westwood Montserrat is not a party to this appeal.

[2] For clarity, we refer to Deborah by her first name.

[3] Undesignated statutory references are to the Code of Civil Procedure.

easements for the planned residential community, and ordered Westwood Montserrat to pay their attorney fees and costs.[4] (*Ibid.*) The trial court confirmed the arbitration award and entered judgments for Sierra de Montserrat Owners Association and the Kincades in the amounts of $176,539 and $124,764, respectively. (*Ibid.*) The trial court subsequently awarded an additional $3,250 in attorneys' fees to the Kincades, bringing the total amount of the judgment in their favor to $128,014. We affirmed the judgment. (*Westwood Montserrat, Ltd. v. AGK Sierra de Montserrat, L.P., supra,* C080395.)

The Kincades recorded an abstract of judgment against Westwood Montserrat in Placer County. They later assigned the judgment to AGCPII. AGCPII obtained a writ of execution against Westwood Montserrat in the amount of $128,014. The Placer County Sheriff recorded a notice of levy on the property on February 1, 2018.

Deborah filed a third-party claim on April 17, 2018. (§ 720.110.) The third-party claim asserted that Deborah had an interest in the property as one of four secured parties under a construction deed of trust recorded on August 27, 2007.[5] Deborah averred that the construction deed of trust secured a loan to Westwood Montserrat in the amount of $2,505,000, the balance of which remained outstanding. Deborah further averred that the construction deed of trust encumbered Lot 26, among other things.

AGCPII responded with a petition for a hearing on the third-party claim on June 28, 2018. (§ 720.310.) AGCPII's petition pointed to an instrument entitled, "Substitution of Trustee and Full Reconveyance" recorded on September 28, 2016. AGCPII observed that Deborah and the other secured parties released their interest in the

---

[4] As between Westwood Montserrat Ltd. and AGK Sierra de Montserrat L.P., the arbitrator found there was no prevailing party and ordered each of them to bear their own attorneys' fees and costs. (*Westwood Montserrat, Ltd. v. AGK Sierra de Montserrat, L.P., supra,* C080395.)

[5] The other beneficiaries were Westwood Homes, Inc., Curtis A. Westwood, and the Lucille Westwood Limited Partnership.

property to Westwood Montserrat by means of the full reconveyance, which was recorded before the notice of levy. AGCPII further observed that the rescission instrument had been recorded on May 18, 2018, after the notice of levy. AGCPII asserted that the rescission instrument was invalid and "a fraud on the court."

In response to the petition, Deborah presented evidence that the construction deed of trust originally encumbered six parcels in the planned residential community, including Lot 26. Deborah submitted declarations from herself and an escrow officer with Stewart Title Guaranty Company averring that Westwood Montserrat sold four of the parcels in a series of transactions over a period of months. For each transaction, the escrow officer prepared a substitution of trustee and deed of partial reconveyance, which was presented to Deborah and the other secured parties for signature. These partial reconveyances allowed Westwood Montserrat to sell the parcels free and clear of the construction deed of trust. (5 Miller & Starr, Cal. Real Estate (4th ed. 2015) § 13:150; 8 Miller & Starr, Cal. Real Estate (4th ed. 2015) §29:35.)

Things changed in September 2016, when Westwood Montserrat entered into an agreement to sell Lot 25, the next to last parcel in the planned residential community. Although the same escrow officer handled the transaction, she departed from the practice she had employed for each of the previous transactions. Rather than prepare a substitution of trustee and deed of *partial* reconveyance, the escrow officer mistakenly prepared a substitution of trustee and deed of *full* reconveyance. The escrow officer presented the erroneous instrument to Deborah and the other secured parties for signature without realizing her mistake. Deborah and the other secured parties executed the substitution of trustee and deed of full reconveyance, without realizing the deed would release *both* Lot 25 *and* Lot 26 from the construction deed of trust. Deborah and the escrow officer each averred that they discovered the mistake on May 11, 2018, after Deborah filed her third-party claim. They further averred that they attempted to correct

4

the error by preparing and executing the rescission instrument, which purports to cancel the reconveyance of Lot 26. The rescission instrument was recorded on May 18, 2018.

AGCPII filed a reply brief in support of the petition, arguing that the rescission instrument was untimely. AGCPII also asserted that the rescission instrument would be prejudicial to AGCPII "as it had no notice of [Deborah's] Deed of Trust at the time of filing its Writ of Execution, and the recording of its Notice of Levy because the September 2016 Full Reconveyance of Lot 26 extinguished any interest she could have in the property."

The parties appeared for argument on the petition on August 21, 2018. The trial court continued the hearing due to the press of business but granted AGCPII's request for leave to file supplemental briefs on the issue of lien priority. AGCPII's opening supplemental brief argued that AGCPII was entitled to priority as a good faith encumbrancer without notice. Deborah responded that AGCPII was a judgment creditor, not a good faith encumbrancer for value, and as such, was not entitled to priority. AGCPII argued in reply that, even as a judgment creditor, AGCPII acted in good faith and relied on the state of title at the time of recording the notice of levy. AGCPII also argued that the rescission instrument, if valid, would cause prejudice to AGCPII by interfering with its ability to collect on the judgment.

The trial court held a hearing on the petition on October 9, 2018. Following argument, the trial court took the matter under submission. The trial court then entered the order appealed from. As relevant here, the order states: "A deed of reconveyance may be rescinded under certain circumstances. In this case, it is clear that the parties who executed the full reconveyance, as well as the drafter of the document, intended the document to be a partial reconveyance based on the sale of one of the lots, while Lot 26 remained the final piece of real property securing the deed of trust. Assignee has no evidence to the contrary. The right to rescind must be acted upon diligently, and is unavailable if during the delay, 'the rights of third parties have intervened so as to render

5

rescission impracticable or inequitable.' [(]*Shumaker v. Foster* (1954) 129 Cal.App.2d 216, 221.[)]  In this case, [Deborah] acted without delay once she learned of the error, and rescission has not been rendered impracticable or inequitable based on assignee's recordation of the notice of levy."  Accordingly, the trial court found Deborah's third-party claim to be valid and indicated that Lot 26 should be released from the levy.  This appeal timely followed.[6]

## II.  DISCUSSION

"Detailed statutory provisions govern the manner and extent to which civil judgments are enforceable." (*Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546.)  "The most common method of enforcing a money judgment is to levy on the judgment debtor's property under a writ of execution." (Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2021) ¶ 6:300.)  "A writ of execution is a court process directed to the levying officer (i.e., sheriff, marshal or constable) of the county where the levy is to be made . . . .  The writ requires the levying officer to enforce the money judgment in the manner prescribed by law." (*Id.* at ¶ 6:311.)

Under section 720.110, subdivision (a), "A third person claiming ownership . . . of property may make a third-party claim under this chapter in any of the following cases if the interest claimed is superior to the creditor's lien on the property: [¶] (a) Where real

---

[6] It is appropriate to briefly mention certain events that transpired after the hearing on the petition, but before the filing of AGCPII's notice of appeal.  We have previously taken judicial notice of recorded documents showing that Deborah and the other secured creditors foreclosed on Lot 26 under the construction deed of trust on October 15, 2018.  Deborah and the other secured parties transferred their interest in the property to a third-party purchaser on November 20, 2018.  ACGPII filed the instant notice of appeal on December 18, 2018, nearly a month later.  The property was sold again, by one third-party purchaser to another, during the pendency of this appeal.

Deborah argues these transactions moot ACGPII's appeal.  We have previously rejected Deborah's motion to dismiss on grounds of mootness and decline to reconsider our earlier ruling.

6

property has been levied upon under a writ of attachment or a writ of execution." The purpose of this third-party claim procedure is "to give a quick and effectual remedy to third parties whose property has been levied upon by mistake." (*Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc.* (1995) 31 Cal.App.4th 1323, 1329.)

After filing a claim with the levying officer setting forth an interest in property (§ 720.120), "either the creditor or the third person may petition the court for a hearing to determine the validity of the third-party claim and the property disposition of the property that is the subject of the claim." (§ 720.310, subd. (a); see *Oxford Street Properties, LLC v. Rehabilitation Associates, LLC* (2012) 206 Cal.App.4th 296, 307 (*Oxford Street*).)

"At a hearing on a third-party claim, the third person has the burden of proof." (§ 720.360; see *Oxford Street, supra,* 206 Cal.App.4th at p. 307.) The third party must prove its interest in the property by a preponderance of the evidence. (*Whitehouse v. Six Corp.* (1995) 40 Cal.App.4th 527, 535 (*Whitehouse*).) "Once the third party establishes its entitlement to the property, the burden shifts to the creditor . . . to establish that its claim is superior." (*Oxford Street, supra,* at p. 307; see also *Whitehouse, supra,* at p. 535 [where third party showed ownership of attached property, burden shifted to creditor to show debtor fraudulently transferred interest in property to third party].)

We review an order regarding lien priority de novo. (*Wells Fargo Bank v. Neilsen* (2009) 178 Cal.App.4th 602, 608; see also *Pou Chen Corp. v. MTS Products* (2010) 183 Cal.App.4th 188, 192 [finding that de novo review applied to the determination of the relative priority between judgment creditor's attorneys' fee liens and judgment debtor's equitable offset based on purchase of judgment against creditor].) However, we review the trial court's factual findings for substantial evidence. (*Oxford Street, supra,* 206 Cal.App.4th at p. 307.) "Under that standard, we consider whether there is any evidence, contradicted or uncontradicted, which will support the trial court's finding." (*Ibid.*) As always, it is " 'appellant's burden to affirmatively show error.' " (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457; see *Jameson v. Desta* (2018) 5 Cal.5th 594,

7

609 ["a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate . . . that the trial court committed an error that justifies reversal"].)

## A. *Validity of the Rescission Instrument*

AGCPII does not seriously challenge the trial court's determination that the rescission instrument was valid. Nevertheless, we begin with an overview of the rules governing rescission, as AGCPII's other contentions turn on the validity of the rescission instrument.

"Rescission is a remedy that *disaffirms* the contract." (Greenwald & Bank, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2020) ¶ 11:460; see also Civ. Code, § 1688 ["A contract is extinguished by its rescission"].) "The remedy assumes the contract was properly formed, but effectively *extinguishes* the contract *ab initio* as though it never came into existence; and its terms cease to be enforceable." (Greenwald & Bank, Cal. Practice Guide: Real Property Transactions (The Rutter Group 2020) ¶ 11:460, second italics added; see also *NMSBPCSLDHB v. County of Fresno* (2007) 152 Cal.App.4th 954, 959-960 [the very definition of rescission is to " 'restore the parties to their former position' "].)

A party may rescind a contract if his or her consent was given by mistake. (Civ. Code, § 1689, subd. (b)(1).) " ' "Rescission for mistake . . . is a remedy by means of which a party may be relieved of the burdens and may procure restitutionary redress respecting a contract which was defective at its inception because consent was not freely or knowingly given." ' " (*Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1145.)

Rescission may be an appropriate remedy for an improvidently made or recorded deed. (*Schultz v. County of Contra Costa* (1984) 157 Cal.App.3d 242, 247.) "However, when ' "the rights of others have intervened and circumstances have so far changed that rescission may not be decreed without injury to those parties and their rights, rescission will be denied and the complaining party left to his other remedies." ' " (*Gill v. Rich*

8

(2005) 128 Cal.App.4th 1254, 1265; see also *Shumaker v. Foster, supra,* 129 Cal.App.2d at p. 221 ["It is elementary that one claiming the right to rescind must act diligently and that his right to rescission is lost if during a period of unexcused delay, the rights of third parties have intervened so as to render rescission impractical or inequitable"].) Thus, " 'there can be no rescission where the rights of third parties would be prejudiced.' " (*Gill v. Rich, supra,* at p. 1265.)

As detailed above, Deborah presented evidence that the full reconveyance was the product of a mistake, and thus subject to rescission. Rescission, here, would extinguish the full reconveyance and restore the secured parties to their former positions, as beneficiaries to a construction deed of trust covering Lot 26. (*NMSBPCSLDHB v. County of Fresno, supra,* 152 Cal.App.4th at pp. 959-960.) Deborah thus carried her burden of establishing an entitlement to the property. (*Oxford Street, supra,* 206 Cal.App.4th at p. 307; *Whitehouse, supra,* 40 Cal.App.4th at p. 535.)

The burden then shifted to AGCPII to establish a superior interest in the property. (*Oxford Street, supra,* 206 Cal.App.4th at p. 307; *Whitehouse, supra,* 40 Cal.App.4th at p. 535.) This AGCPII failed to do. As the trial court observed, AGCPII offered no evidence that the full reconveyance reflected the actual intent of the secured parties with respect to Lot 26. Although AGCPII suggested that rescission would interfere with its ability to collect on the judgment, there was no evidence that AGCPII changed position as a result of the full reconveyance, and AGCPII made no attempt to argue that the balance of equities should preclude rescission.[7] (Cf. *Duley v. Westinghouse Electric Corp.* (1979) 97 Cal.App.3d 430, 432 [affirming an order "cancelling" an erroneously

---

[7] We assume that AGCPII incurred costs in obtaining a writ of execution against Westwood Montserrat and instructing the Placer County Sheriff to record a notice of levy on the property, but AGCPII submitted no evidence of any such costs, and we decline to speculate on whether they could have been material enough to shift the balance of equities in AGCPII's favor.

9

recorded full reconveyance and concluding that the secured parties would otherwise be deprived of the security for their loan, while a judgment creditor enforcing an after-recorded abstract of judgment would reap a windfall].)  The trial court thus implicitly concluded that AGCPII failed to carry its burden of showing that the rights of third parties had intervened or circumstances had so changed as to make rescission impractical or inequitable.  (*Shumaker v. Foster, supra,* 129 Cal.App.2d at p. 221.)  AGCPII does not directly challenge the trial court's findings or conclusions.  We therefore accept the trial court's determination that the full reconveyance was properly rescinded.  Having done so, we can now turn to AGCPII's core contentions.

B.      *First in Time, First in Right*

AGCPII argues the notice of levy was recorded before the rescission instrument, and therefore, AGCPII has priority under the "first in time, first in right" rule.  (See Civ. Code, § 2897.)  As Deborah observes, AGCPII's argument fails to reckon with the legal effect of the rescission instrument.

"California follows the 'first in time, first in right' system of lien priorities." (*Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1099; see Civ. Code, § 2897 ["Other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and respondentia"].) "With respect to real property, a conveyance recorded first generally has priority over any later-recorded conveyance." (*Thaler v. Household Finance Corp., supra,* at p. 1099.)

There is no denying that the notice of levy was recorded before the rescission instrument.  But the effect of the rescission instrument was to extinguish the full reconveyance and restore the secured parties to the status quo ante.  (*NMSBPCSLDHB v. County of Fresno, supra,* 152 Cal.App.4th at pp. 959-960.)  "Rescission extinguishes a contract, rendering it void *ab initio*, as if it never existed." (*DuBeck v. California Physicians' Service* (2015) 234 Cal.App.4th 1254, 1264.)  This means that the full reconveyance never existed in the eyes of the law.  With the full reconveyance out of the

10

picture, the construction deed of trust was "first in time," and thus, ahead of the notice of levy. The "first in time, first in right" rule thus favors Deborah, not AGCPII. We therefore reject AGCPII's contention that the "first in time, first in right" rule requires reversal.

## C.    *Good Faith Encumbrancer for Value*

AGCPII next argues that the notice of levy should be entitled to priority because AGCPII relied on record title at the time the notice was recorded and had no way of knowing that the full reconveyance was erroneous. AGCPII places heavy emphasis on *First Fidelity Thrift & Loan Assn. v. Alliance Bank* (1998) 60 Cal.App.4th 1433 (*First Fidelity*), arguing that the present case is "the same." Not so. *First Fidelity*, though superficially similar, is factually distinguishable and analytically inapposite.

*First Fidelity* was concerned with a question of priority between (1) First Fidelity's deed of trust, which was first in time and first recorded, but erroneously reconveyed as a result of First Fidelity's error, and (2) Alliance's deed of trust, which was second in time but first of record as a result of First Fidelity's mistake, of which Alliance had no knowledge. (*First Fidelity, supra,* 60 Cal.App.4th at pp. 1436-1440.) The *First Fidelity* court affirmed the long-standing principle that, "[a] good faith encumbrancer for value who first records takes its interest in the real property free and clear of unrecorded interests." (*Id.* at p. 1440.) The court found Alliance met its initial burden on summary judgment to show that it had no knowledge that First Fidelity had a claim (i.e., that First Fidelity had reconveyed in error). (*Id.* at p. 1442.) The burden thus shifted to First Fidelity to present evidence raising a triable issue of fact that Alliance did have notice. (*Ibid.*) First Fidelity attempted to meet this evidence by presenting evidence that Alliance was aware of First Fidelity's encumbrance against the commercial property, but failed to contact First Fidelity to confirm the reconveyance. (*Id.* at pp. 1443-1444.) The court concluded that Alliance had no duty to investigate to determine whether the reconveyance had been in error. (*Id.* at pp. 1444-1445.)

11

Like *First Fidelity*, the present case involves an erroneous reconveyance and a subsequent lienor without notice. But the similarities end there. Unlike the subsequent lienor in *First Fidelity*, nothing suggests that AGCPII is a good faith encumbrancer for value. Rather, the record reveals that AGCPII has a judgment lien as an assignee of the Kincades.[8] Though AGCPII may have acted in good faith and without notice of the erroneous reconveyance, there is no basis for concluding that AGCPII has any status other than judgment creditor. A judgment creditor cannot be a good faith encumbrancer for value. (*City of Torrance v. Castner* (1975) 46 Cal.App.3d 76, 80 ["It is the rule in California that a judgment creditor is not entitled to the protection as a bona fide purchaser for value, but, rather, stands in the shoes of the judgment debtor and obtains by his judgment lien only that interest in the property which the judgment debtor actually possesses"]; *Fulkerson v. Stiles* (1909) 156 Cal. 703, 705 ["A judgment plaintiff has a mere general lien upon the real property of the judgment defendant. Such lien is an incumbrance, but the original judgment plaintiff is not ordinarily an incumbrancer for a valuable consideration"].) As a judgment creditor, AGCPII can draw no comfort from *First Fidelity* or the protections afforded to good faith encumbrancers for value. AGCPII's reliance on *First Fidelity* is unavailing.

---

[8] AGCPII argues that it acquired the status of a good faith encumbrancer for value by paying valuable consideration for the assignment of the judgment. But nothing in the record discloses what, if any, consideration AGCPII paid for the assignment, and AGCPII does not explain how, as an assignee, it could have acquired greater rights to the property than the Kincades. (*Northam v. Gordon* (1863) 23 Cal. 255 [assignee of judgment "stands in no better position" than the assignor].) AGCPII's undeveloped arguments fail to demonstrate error.

## III.  DISPOSITION

The judgment is affirmed.  Deborah Westwood is entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

_____

RENNER, J.

We concur:

/S/

_____

HULL, Acting P. J.

/S/

_____

MAURO, J.