Filed 6/10/15  Kenne v. Stennis CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KATHLEEN A. KENNE, | B250195 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC092747) |
| v. | |
| KEVIN P. STENNIS, | |
| Defendant and Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Richard A. Stone, Judge.  Affirmed.

Kathleen A. Kenne, in pro. per., for Plaintiff and Appellant.

Law Office of Helaine Hatter and Helaine Hatter for Defendant and Respondent.

_____

Plaintiff Kathleen A. Kenne appeals from post-judgment trial court orders granting Kevin P. Stennis's third party claim of ownership of real property upon which Kenne had filed a writ of execution to satisfy a judgment against Kevin's mother, Zelma Stennis (Zelma).[1]  We affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

We considered a previous appeal from the instant lawsuit, *Kenne v. Stennis* (Super. Ct. L.A. County, 2009, No. SC092747), and issued a nonpublished opinion in 2013.  (*Kenne v. Stennis* (Feb. 26, 2013, B221752).)  As the factual and procedural background is the same for the instant appeal, we quote relevant sections from the prior opinion.  We then set forth the post-judgment facts and procedural background specific to this appeal.

### A.  *Initiation of Lawsuit Through Judgment*

"Kenne was an attorney and a personal friend of—and at one time romantically involved with—William Davis (Davis), a disbarred attorney.[2]  Davis was an old family friend of Zelma and her family, including her son, Kevin, who was a Deputy District Attorney for Los Angeles County.  Kenne had been introduced to Kevin in 1997 when they were both law students.

"In 2003, Zelma sued Cecil McNabb (McNabb) for money he owed her arising from his purchase of her restaurant chain, Golden Bird, Inc., and from his lease of two restaurant locations which belonged to Zelma.  She also sought to evict McNabb from her

---

[1]    For clarity, we use the first names of Zelma and Kevin, given that they have the same last name.

[2]    Davis was not a party to the original appeal or this appeal.

commercial real property known as 12801 and 12815 South Central Avenue in Los Angeles (the [Compton] property). Zelma was initially represented pro bono by the law firm of McKenna, Long & Aldrich, LLP. After a jury trial resulting in eviction of McNabb from Zelma's commercial property, the law firm discontinued representation. At the firm's suggestion, she engaged another attorney, Dwayne L. Abbot (Abbot), to assist her with the remaining matters in the litigation.

"During Abbot's representation of Zelma, Davis suggested that Zelma let Abbot go and, instead, engage the services of Kenne. Davis made oral arrangements with Zelma to assist her, for a fee, in selling the [Compton] property and to loan her money to enable her to pay Abbot. On May 4, 2004, Zelma engaged Kenne and signed two agreements with Kenne. The retainers were for Kenne's services in two lawsuits between Zelma and McNabb that were then pending. Zelma was 81 years old when she signed the retainers.

"The retainers specified that Zelma agreed to pay Kenne attorney's fees at the rate of $250 per hour and to reimburse her for out-of-pocket costs and expenses. Each retainer stated that Zelma 'agrees to pay all fees and expenses due upon the sale of [Zelma's] real property known as 12801-12815 South Central Avenue, Los Angeles, California 90059[, the Compton property] . . . . In the unlikely event that [Zelma] is unable . . . to pay attorney fees from the sale of the [Compton] property, [Zelma] shall . . . pay [Kenne] from other sources.'

"One retainer was for litigation entitled *Zelma R. Stennis v. Golden Bird, LLC, et al.,* Los Angeles County Superior Court Case No. 03Q01449, an unlawful detainer action to regain possession of the [Compton] property. Judgment had already been entered in favor of Zelma against one of the two business entities in possession of the property, but postjudgment actions were needed to regain possession of the property.

"After five unsuccessful attempts to obtain a writ of possession against the second business entity, the entity not named in the unlawful detainer judgment, Kenne filed three unlawful detainer actions in an effort to regain possession of the [Compton] property

3

from the second business entity.[3]  In April 2005, after a five-day court trial, the court entered judgment in favor of Zelma and against the second business entity.  By May 2005, Zelma had regained possession of the [Compton] property.

"The other retainer was for a case entitled *Credit Managers Association of California v. Golden Bird, LLC et al.*,[4] Los Angeles County Superior Court Case No. BC291647.  Zelma and her then-bankrupt corporation, Golden Bird, Inc., were named as cross-defendants in the case.  Kenne represented both Zelma and the corporation.  The action and its cross actions were dismissed after the parties reached a settlement agreement in March 2006.

"Beginning in October 2006, Zelma stopped returning Kenne's telephone calls. Zelma had ceased working with Davis and had engaged a real estate brokerage firm to sell the [Compton] property.  Neither Zelma nor Kevin responded to Kenne's certified letter of October 20, 2006, requesting reasonable assurances of payment for outstanding legal fees and costs.  They also did not respond to Kenne's certified demand letter of January 6, 2007, for payment of all outstanding fees and costs.

"In early February 2007, Kenne learned that Zelma had entered into escrow for sale of the [Compton] property.  On February 13, Kenne filed the instant action against Zelma and Kevin for breach of contract, i.e., the retainer agreements, with damages in the sum of $363,692.02; for fraud, alleging, inter alia, promise without intent to perform; and for common counts for services rendered in the sum of $363,692.02.  The next day Kenne recorded a lis pendens against 12801 South Central Avenue and another against 12815 South Central Avenue [together, the Compton property].

---

3      "The additional unlawful detainer actions were each entitled *Zelma R. Stennis v. Golden Bird Franchise Company, LLC et al.* and were filed in Los Angeles County Superior Court as Case Nos. 04Q00982, 04Q01308, and 04Q02040."  (*Kenne v. Stennis*, *supra*, B221742, p. 3.)

4      "In the retainer agreement, the case was erroneously identified as *Cecil McNab[b], et al. v. Zelma R. Stennis, et al.,* Los Angeles County Superior Court Case No. BC291647."  (*Kenne v. Stennis*, *supra*, B221742, p. 3.)

4

"Kenne filed the operative first amended complaint on June 14, 2007. She alleged causes of action for breach of written contracts (first), breach of oral contracts (second), common counts (third), fraud (fourth), intentional interference with contractual relations (fifth) and intentional interference with prospective economic advantage (sixth).

"In September 2007, Kenne and Zelma entered into a conditional settlement and release agreement, with a related escrow instructions addendum for close of escrow in October. The buyer then requested an escrow extension to a December date. Zelma signed an addendum to escrow instructions providing for the December closing date but did not submit it to the escrow officer.

"Subsequently, the buyer for the [Compton] property requested that close of escrow be extended for 75 days to a date in late December rather than for the October date provided in the settlement agreement. Zelma refused to agree to the proposed extension to December. In October 2007, Kenne made an ex parte application and motion to enforce the conditional settlement agreement and to have judgment entered in her favor. The basis for these was that Zelma had breached the settlement agreement by not submitting her signed agreement to amend the closing date.

"Zelma opposed the application. Among the reasons she gave in her opposing declaration was that she was willing to pay reasonable amounts to Kenne and Davis, but the amounts they had put in the settlement agreement were unreasonable. She also stated that Kenne and Davis told her that by signing the settlement agreement, 'the entire lawsuit would be over for me and my son,' but she had since learned that the settlement did not include Kevin. Further, she had no lawyer to review the papers and, at the meeting on the settlement agreement, Kenne and Davis had encouraged her to discharge her attorney, Michael F. Coley, on the basis he was inept and presented a letter discharging her attorney for her to sign. Zelma also stated that she was 85 years old, had high blood pressure and diabetes, and the lawsuit had caused stress and many health problems for her. She attached a corroborating letter from her doctor. Zelma's grandson also gave an opposing declaration. His declaration was consistent with Zelma's declaration.

5

"The trial court denied Kenne's ex parte application and motion without prejudice in November, thereby allowing Kenne to renew them if escrow did not close in December. The court found that the settlement agreement was valid and enforceable. The court explained that Kenne had failed to show that the failure of the condition precedent, the close of escrow, was Zelma's fault, that is, that Zelma had breached the agreement.

"Kenne renewed her application and motion on December 21, 2007. Her declaration stated that Zelma had signed an escrow amendment to extend the closing date to December 17 but had never submitted it to the escrow officer. After a continuance requested by Kenne, the trial court denied her renewed application and motion. The court stated that the settlement agreement required payment from escrow proceeds, but it was not consistent with the retainer agreements, which provided an alternative, that is, 'in the "unlikely event" that the property is not sold, the client must pay attorney fees from other sources.'

"Kenne moved for summary judgment or, in the alternative, summary adjudication. In March 2008, the trial court denied the motion on the ground triable issues of material fact remained as to each cause of action.

"Kenne submitted a second renewal of her motion to enforce the conditional settlement agreement and enter judgment. In May 2008, the trial court denied the motion on the same ground as its denial of her previous renewed motion. The trial court granted Kenne's request for continuance of the trial date from August 11 to October 6, 2008.

"On August 27, 2008, Kenne recorded a lis pendens against Zelma's condominium at 2369 South Beverly Glen Boulevard, Unit #105, Los Angeles. Kenne also recorded a lis pendens against real property Zelma owned at 1724 West Adams Boulevard, Los Angeles. Zelma and Kevin filed a motion to expunge these lis pendens plus the previously-recorded lis pendens on 12801 South Central Avenue. After a December 2008 hearing, the trial court granted the motion.

"In the meantime, in July 2008, Zelma and Kevin filed an application for mandatory fee arbitration through the Los Angeles County Bar Association (LACBA).

6

On September 1, 2008, the authorized LACBA official issued a decision that LACBA had jurisdiction, and that arbitration was mandatory. The official also found that Kenne had failed to give Kevin the statutorily required notice of the right to arbitrate fee disputes and, if she gave one to Zelma, it may not have been effective, given Kenne's statement in her lawsuit that Zelma was '"incapable of properly handling her legal and financial affairs."' Kenne's request for reconsideration was denied.

"On October 6, the date the trial in the case had been set to start, the court found that the action was stayed automatically, effective July 24, while the mandatory fee arbitration was pending (Bus. & Prof. Code, § 6201, subd. (c)). The court vacated the trial date. On March 12, 2009, the arbitration award was issued, requiring Zelma and Kevin to pay Kenne the sum of $39,414.22. Kenne promptly filed notice of termination of the stay as of March 16 and her rejection of the award, and a request for trial to determine the amount of fees.

"Zelma moved for leave to file a compulsory cross-complaint against Kenne for legal malpractice. The trial court granted the motion. Zelma filed the cross-complaint on May 13, 2009. She alleged causes of action for legal malpractice (first), breach of contract (second), fraud (third), breach of fiduciary duty (fourth) and negligent infliction of emotional distress (fifth). On June 24, she filed the operative first amended cross-complaint, adding a cause of action for slander of title (sixth).

"In July 2009, Zelma and Kevin filed a motion for judgment on the pleadings and a motion to void the retainer agreements for failure to comply with Business and Professions Code section 6148. The trial court denied their motion.

"Kenne filed a demurrer to the cross-complaint. As to the fifth cause of action for negligent infliction of emotional distress, the trial court sustained the demurrer without leave to amend. The court overruled Kenne's demurrer to the other causes of action. In overruling Kenne's demurrer to the sixth cause of action for slander of title, the court rejected Kenne's argument that the filing of a lis pendens is absolutely privileged under Civil Code section 47. The court denied Kenne's motion to strike portions of the cross-

7

complaint, except that the court ordered lines 12 to 18 on page 4, regarding some aspects of the fee arbitration, to be stricken.

"On August 24, 2009, Kenne filed a compulsory cross-cross-complaint for damages against Zelma, Kevin, Golden Age Bird Inc., Kevin Pierre Stennis, Jr., and Helaine Hatter. The complaint alleged 16 causes of action. In September, the trial court granted the motion by Zelma and Kevin to strike Kenne's entire cross-cross-complaint.

"The jury trial on Kenne's complaint and Zelma's cross-complaint began on October 13, 2009. The jury reached a verdict on Kenne's complaint as follows:

"On the breach of contract cause of action against Zelma, the jury found that Kenne and Zelma entered into a contract, but Kenne did not do all, or substantially all, of the significant things that the contract required her to do, and she was not excused from having to do such things. The jury did not find that Kenne suffered any damages based upon her contract with Zelma.

"On the breach of contract cause of action against Kevin, the jury found that Kenne and Kevin did not enter into a contract. There being no contract with Kevin, Kenne suffered no damages.

"On the intentional misrepresentation and concealment causes of action against Zelma and Kevin, the jury found that neither Zelma nor Kevin made a false representation of an important fact to Kenne or intentionally failed to disclose an important fact that Kenne did not know and could not reasonably have discovered. Kenne suffered no damages.

"On the false promise cause of action against Zelma and Kevin, the jury found that Zelma made a promise to Kenne that was important to the transaction but she intended to perform the promise when she made it. The jury found that Kevin did not make such a promise. The jury found that Kenne did not suffer any damages.

"On the intentional interference with contractual relations cause of action against Kevin, the jury found there was a contract between Kenne and Zelma, Kevin knew of the contract, Kevin intended to disrupt performance of the contract, his conduct either prevented performance or made performance more expensive or difficult, but his conduct

8

was not a substantial factor in causing harm to Kenne. The jury found that Kenne did not suffer any damages.

"On the intentional interference with prospective economic relations cause of action against Kevin, the jury found there was an economic relationship between Kenne and Zelma that probably would have resulted in an economic benefit to Kenne, Kevin knew of the relationship, Kevin intended to disrupt the relationship, but he did not engage in wrongful conduct through interference with the economic relationship. Again, Kenne did not suffer any damages.

"On the common counts cause of action against Zelma for reasonable value of goods and services rendered, the jury found that Zelma requested that Kenne perform legal services for Zelma's benefit, Kenne did perform such legal services, Kenne advanced litigation costs for Zelma's benefit, but Zelma had not paid Kenne for the legal services or litigation costs Kenne advanced. The jury determined that the reasonable value of the legal services Kenne provided was $176,901.03, and the reasonable value of the unpaid litigation costs advanced was $313.97.

"On Kenne's common counts cause of action against Kevin for reasonable value of goods and services rendered, the jury found that Kevin requested that Kenne perform legal services for Zelma's benefit, Kevin requested that Kenne advance litigation costs for Zelma's benefit, but Kenne did not perform legal services or advance litigation costs for Kevin. The jury determined that Kenne was not entitled to recover any fees or costs from Kevin.

"Finally, on Kenne's punitive damages claims against Zelma and Kevin, the jury determined that Zelma and Kevin did not engage in conduct with malice, oppression, or fraud. The jury also found that Kevin, as Zelma's agent, did not engage in conduct with malice, oppression or fraud.

"On Zelma's cross-complaint against Kenne, the jury's verdict was as follows:

"On Zelma's breach of contract cause of action, the jury found that Zelma and Kenne entered into a contract, Zelma did not do all, or substantially all, of the significant things that the contract required her to do, but Zelma was excused from doing so. All the

9

conditions occurred that were required for Kenne's performance, but Kenne failed to do something that the contract required her to do. However, Zelma was not harmed by that failure and therefore had no damages.

"On Zelma's legal malpractice cause of action, the jury found that Kenne did not commit professional negligence.

"On Zelma's breach of fiduciary duty cause of action, the jury found that Kenne owed Zelma a fiduciary duty as her attorney, Kenne breached her fiduciary duty, Zelma was harmed as a result, and Kenne's conduct was a substantial factor in causing Zelma's harm. The jury determined that Kenne caused Zelma noneconomic loss, including physical pain and suffering, in the amount of $50,000.

"On Zelma's fraud by concealment cause of action, the jury found that Kenne intentionally failed to disclose an important fact that Zelma did not know and could not reasonably have discovered, but Kenne did not intend to deceive Zelma by concealing the fact. Zelma suffered no damages.

"On Zelma's slander of title cause of action, the jury found that Kenne published a communication, the lis pendens, but the publication was with privilege or justification. The jury found no damages.

"The jury made the following damages awards as to all causes of action: (1) Kenne was awarded from Zelma damages in the amount of $177,215.00; (2) Kenne was awarded from Kevin damages in the amount of $0; (3) Zelma was awarded from Kenne damages in the amount of $50,000.00.

"Based on the jury's verdicts, the trial court entered judgment on November 9, 2009 as follows: (1) On Kenne's complaint, judgment in favor of Kenne and against Zelma in the amount of $177,215.00, with interest, and costs in the sum of $4,231.79. (2) On Kenne's complaint, judgment in favor of Kevin and against Kenne, with Kevin to recover the amount of $40,855.32 for his attorney's fees and costs. (3) On Zelma's cross-complaint, judgment in favor of Zelma and against Kenne in the amount of $50,000.00.

"On November 20, 2009, Kenne filed a motion for a partial judgment notwithstanding the verdict (JNOV) or, in the alternative, for a partial new trial. Kenne's

10

JNOV sought a partial judgment in her favor as to the jury's award to Zelma for emotional distress in Zelma's breach of fiduciary duty claim. Kenne sought a partial new trial on Zelma's breach of fiduciary duty claim, based on the claimed erroneous modification of Kenne's jury instruction regarding a one-year statute of limitations for breach of fiduciary duty pursuant to Code of Civil Procedure section 340.6 and erroneous withdrawal of Kenne's special verdict form on her affirmative defense of the one-year statute.

"On December 7, 2009, Zelma filed a motion for a partial JNOV with respect to the jury's verdict and damages awarded to Kenne on her common count cause of action, and a motion for a partial new trial on her slander of title cause of action.

"After a hearing on January 7, 2010, the trial court denied both motions for a partial JNOV or, in the alternative, for a partial new trial. The court gave no explanation on the record or in writing for its rulings.

"On January 13, the trial court heard argument on Zelma and Kevin's motion for attorney's fees, Kenne's motion to strike Kevin's memorandum of costs and Kenne's motion to strike Zelma's memorandum of costs. The court issued a tentative ruling but took the matter under submission.

"On January 19, the trial court issued its final ruling on the three motions. The court ruled that Kenne was the prevailing party with regard to Zelma on the complaint and the cross-complaint, under Code of Civil Procedure section 1032, subdivision (a)(4). The court therefore granted Kenne's motion to tax all costs Zelma claimed. The court ruled that the fees and costs provisions of Code of Civil Procedure section 998 were not applicable because the July 2008 offer was not made in accordance with statutory procedure in subdivision (b)(2) of section 998.

"The court found that Kevin was the prevailing party with regard to Kenne on her complaint under Code of Civil Procedure section 1032, subdivision (a)(4), and he had a unity of interest with Zelma, in that he was one of two jointly represented defendants presenting a unified defense. The court exercised its discretion to award costs to Kevin, given that he incurred no liability. The court granted Kenne's motion to tax Kevin's

11

costs in part, but it awarded Kevin a total of $2,378.07 in costs other than attorney's fees. Under the mandatory fee arbitration statute, Business and Professions Code section 6204, Kevin was the prevailing party in regard to Kenne. The court apportioned attorney's fees between Kevin and Zelma using a lodestar method, based upon a thirty-five percent allocation of hours to Kevin. The court awarded attorney's fees to Kevin in the amount of $38,477.25." (*Kenne v. Stennis*, *supra*, B221752, pp. 2-11.) Both Kenne and Zelma appealed from the judgment. We affirmed. (*Id*. at p. 33.)

## B. *Post-judgment Collection Efforts*

At the time Kenne began collection efforts, her position was that Zelma's assets consisted primarily of the Compton property referred to in her retainer agreements with Zelma, one other commercial property commonly known as 1724 West Adams Boulevard in the City of Los Angeles (Adams property), and Zelma's residential condominium located at 2369 South Beverly Glen Boulevard in Los Angeles (Beverly Glen condominium).

In 2008, as a gift, Zelma granted the Adams property to Kevin. The property consisted of three lots at 1722, 1724 and 1734 West Adams Boulevard, Los Angeles, and together the lots formed a retail mall. Zelma signed the grant deed on July 14, 2008, and had the deed recorded on July 17, 2008. In November 2007, Zelma transferred her Beverly Glen condominium to herself and, as a gift, to Kevin as joint tenants. The condominium grant deed was recorded December 13, 2007.

On February 13, 2009, prior to entry of judgment in the underlying lawsuit, Kenne filed a first amended complaint in a second lawsuit against Zelma, Kevin, Hatter, who was Kevin's attorney and wife, and Kevin Pierre Stennis, Jr., Kevin's son. The case is entitled *Kenne v. Hatter* (Super. Ct. L.A. County, [pending], No. SC100219). Kenne alleged, inter alia, fraudulent transfers in violation of the Uniform Fraudulent Transfer Act (UFTA; Civ. Code, § 3439 et seq.) with respect to the transfers Zelma made to Kevin of the Adams property and the Beverly Glen condominium. This second lawsuit remained pending during the time of Kenne's enforcement efforts at issue here.

12

Shortly after the November 9, 2009 judgment, Kenne began efforts to collect the damages she had been awarded. On February 10, 2010, she obtained an abstract of judgment naming Zelma as the judgment debtor for $181,446.79 plus interest at 10 percent per annum from the entry of judgment. On February 16, 2010, Kenne recorded this abstract of judgment solely against Zelma as the judgment debtor.

On August 26, 2010, the trial court heard argument on Kenne's applications for examination of Zelma as a judgment debtor and Kevin as a third party subject to attachment, as part of Kenne's efforts to enforce her judgment. The court denied the applications. The court found that Zelma had not been properly served, and that Kenne failed to show that, as a third party, Kevin had "possession or control of property in which the judgment debtor has an interest." (Code Civ. Proc., § 708.120, subd. (a).)[5]

At Kenne's request, in April 2013, the superior court clerk issued a writ of execution on a money judgment for $245,681.85[6] plus interest at the daily rate of $50.09 plus specified court costs of $3,494.27. The writ listed Zelma as the judgment debtor. Kenne recorded a notice of levy for execution (money judgment) for the Adams property and the Compton property on April 22, 2013. She posted the required bond.

## C. *Zelma's Claim of Exemption and Kevin's Third Party Claim*

On April 30, 2013, Zelma filed a claim of exemption for the Adams and Compton properties. The claim included Zelma's declaration and a copy of the 2008 deed of the Adams Property to Kevin. In her declaration, Zelma stated she had no interest in the Adams property and did not receive any rents from it. She also claimed that the $50,000

---

[5] All further statutory references are to the Code of Civil Procedure unless otherwise expressly identified.

[6] The following items comprised the $245,681.85 total: (a) $177,215 in damages plus $4,231.79 in costs and disbursements ("total judgment" of $181,446.79); (b) $1,378.38 costs after judgment (§ 685.090); (c) $62,831.68 interest after judgment (§ 685.050); and (d) $25.00 fee for issuance of the writ.

13

(plus interest) she was awarded against Kenne in the November 9, 2009 judgment was exempt from levy and should be set off from the creditor's judgment.

On May 2, 2013, pursuant to sections 720.110 and 720.210, Kevin filed a third party claim of ownership of the Adams property and the rents and other income arising from that real property. In addition to claiming ownership of the property and entitlement to rents, Kevin asserted that Kenne owed him $40,855.32 plus interest for the attorneys' fees judgment he obtained against Kenne. Kevin requested to "levy" any money being held for Kenne pursuant to her notice of levy and garnishment of rents from the Adams property, and to release his property and rents from garnishment.

On June 21, 2013, the trial court held a hearing on Kevin's third party claim of ownership of the Adams property and on Zelma's claim of exemption for the Compton and Adams properties. The trial court took judicial notice of a certified grant deed and certified parcel tax records which Kevin presented as evidence of his ownership of the Adams property.

To rebut Kevin's claim, Kenne offered a preliminary title report and asserted that the Adams property had been fraudulently transferred from Zelma to Kevin. The trial court sustained Kevin's objection to the preliminary title report, and excluded it. The trial court ruled that Kenne presented insufficient evidence to rebut Kevin's claim of ownership, and granted his third party claim with respect to the Adams property.

The trial court denied Zelma's claim of exemption for the Compton property and stated that to enforce her judgment against Kenne for $50,000, Zelma should make a motion for a set off.

On July 2, 2013, Zelma died.

On July 3, 2013, the trial court issued orders that (1) Kevin's objection to Kenne's preliminary title report was sustained as hearsay; (2) Kevin's third party claim was granted and all rents that were garnished pursuant to Kenne's prior garnishment order were to be returned to Kevin; (3) the notice of levy for the Adams property was quashed, the bond was also quashed, and Kevin may bring a separate motion for damages; (4) Zelma's claim of exemption as to the Compton property was denied, and if Zelma

14

obtained a buyer ready to purchase the property she may bring that to the attention of the trial court; and (5) Zelma should file a separate claim for setoff for the $50,000 damages she was awarded against Kenne.

On July 19, 2013, Kenne filed this appeal from the trial court's order entered on July 3, 2013 with respect to Kevin's third party claim.

## DISCUSSION

### A. *Kevin Qualifies as Third Party Claimant*

Kenne contends that Kevin is a codefendant and, as such, he is not allowed by law to assert a third party claim[7] in the proceedings she has initiated to enforce the judgment she has against Zelma. In support of her contention, Kenne relies on *Commercial & Farmers Nat. Bk. v. Hetrick* (1976) 64 Cal.App.3d 158, which states: "There is no statutory authorization for the use of third party claim procedures by named defendants in an action. Nor do we perceive any logical reason for the use of such procedures by defendants." (*Id.* at p. 165.)

We do not find *Hetrick* on point under the current circumstances. *Hetrick* involved a prejudgment writ of attachment in a case where the parties to the third party claim procedure were codefendants in ongoing litigation. Here, the underlying litigation resulted in a judgment for Kenne against Zelma, but not against Kevin. Kenne is attempting to levy against property to satisfy her judgment against Zelma. Kenne's unsuccessful prior claim against Kevin is irrelevant to Kenne's enforcement proceedings against Zelma.

_____

[7]     Kenne claims that Kevin is a codefendant with Zelma in two actions, first, the instant action, Los Angeles Superior Court case No. SC092747, and a second related lawsuit, Los Angeles Superior Court case No. SC100219. This appeal is limited to case No. SC092747. Kevin's status in the second lawsuit does not prevent him from utilizing the third party claim procedure here.

15

Kevin claims ownership of the property and associated rents subject to levy—this is the precise circumstance for which the third party claim procedure was designed. "The Enforcement of Judgments Law (§ 680.010 et seq.) includes procedures for determining the claims of third persons, i.e., those other than the judgment debtor and creditor. (§ 720.010 et seq.) . . . [¶] The third party claims procedure is available to a person claiming a superior ownership or possessory right in real property that is subjected to attachment or execution to satisfy a money obligation. The third party claims procedure also may be utilized to assert superior claims of ownership or right to possession where personal property has been levied upon. [Citations.]" (*Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc.* (1995) 31 Cal.App.4th 1323, 1329.)

Kevin qualifies as a third party claimant under section 720.110: "A third person claiming ownership or the right to possession of property may make a third-party claim under this chapter in any of the following cases if the interest claimed is superior to the creditor's lien on the property: [¶] (a) Where real property has been levied upon under a writ of attachment or a writ of execution. [¶] (b) Where personal property has been levied upon under a writ of attachment, a writ of execution, a prejudgment or postjudgment writ of possession, or a writ of sale."

For the foregoing reasons, we conclude that there is no merit to Kenne's argument that Kevin is precluded from bringing a third party claim on the basis that he was once a named defendant.

**B.** *Substantial Evidence of Kevin as the Owner of the Adams Property*

Kenne claims that Kevin did not provide evidence in the proper form and at the proper time to support his assertion that he was the owner of the Adams property since July 2008, and, therefore, that his ownership had priority over Kenne's writ of execution recorded in 2010. We disagree.

16

1.  Burden of Proof and Substantial Evidence Standard

"At a hearing on a third-party claim, the third person has the burden of proof" of his superior right to the property at issue.[8] (§ 720.360.) "The third party claimant is required to introduce evidence that it owns the attached property. [Citation.] Once the third party accomplishes this, the burden shifts to the creditor to establish that the transfers represented by the deeds were fraudulent" or that the creditor has a superior claim the property. (*Whitehouse v. Six Corp.* (1995) 40 Cal.App.4th 527, 535 (*Whitehouse*).) "At the hearing on the claim, the third party has the burden of proof [initially]. [Citations.] Once the third party establishes its entitlement to the property, the burden shifts to the creditor . . . to establish that its claim is superior. [Citation.]" (*Oxford Street Properties, LLC v. Rehabilitation Associates, LLC* (2012) 206 Cal.App.4th 296, 307.) Kenne claims that the trial court erred in finding that Kevin met his burden of proof. We disagree and affirm the trial court's ruling.

Third party claim hearings do not require a jury trial or findings. (§§ 720.390, 720.400, 720.410.) Parties select the third party claim procedure because it is an "expeditious and relatively inexpensive procedure to clear title in preference to other equitable and legal remedies." (*Whitehouse*, *supra*, 40 Cal.App.4th at p. 536; see also *Oxford Street Properties, LLC v. Rehabilitation Associates, LLC*, *supra*, 206 Cal.App.4th at p. 307.)

We must uphold the trial court's finding that Kevin is the title holder and owner of the Adams Property if it is supported by substantial evidence. (*Oxford Street Properties, LLC v. Rehabilitation Associates, LLC*, *supra*, 206 Cal.App.4th at p. 307 ["[w]e review the trial court's factual findings . . . for substantial evidence"].) "'In evaluating the legal sufficiency of the evidence, the following basic approach is required: "First, one must

---

[8]     """""Burden of proof" means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court.'. . ." . . . The party having the burden of proof must offer evidence so that the trier may have a basis for finding in his favor. . . .'" (*ITT Commercial Finance Corp. v. Tech Power, Inc.* (1996) 43 Cal.App.4th 1551, 1557-1558, italics omitted.)

resolve all explicit conflicts in the evidence in favor of the respondent and presume in favor of the judgment all *reasonable* inferences. [Citation.] Second, one must determine whether the evidence thus marshaled is substantial."'" (*Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 491.)

    2. Evidence Offered By Kevin

Kenne challenges the trial court's consideration of Kevin's evidence of ownership of the Adams property. Kenne contends Kevin did not attach a deed or other documentary evidence to his third party claim as required by statute, the court improperly took judicial notice of Kevin's deed, and the land description on Kevin's deed was incorrect and, therefore, the deed never properly vested ownership in Kevin.

    a. *Evidence of Kevin's Ownership and Priority in Interest*

Kenne contends that Kevin's third party claim was defective because there was no deed or other documentary evidence of his ownership attached to his claim as required by section 720.130. Review of the record reveals that Kenne is mistaken. While Kenne is correct in her statement of the legal requirement, the record reflects that Kevin did in fact attach to his claim a copy of the 2008 deed from Zelma to him. Kevin provided the trial court with (1) a certified copy of the July 14, 2008 deed by which Zelma gifted the Adams property to Kevin, which deed was recorded on July 17, 2008, and (2) a certified copy of the property tax record showing his name as the person responsible for payment.[9] When Zelma filed her claim of exemption on May 2, 2013, she attached a copy of the 2008 Adams property gift deed. Zelma also confirmed in her declaration dated April 30,

---

[9]    Kevin also appended to his "amended supplemental declaration" filed June 17, 2013 a notice of change of ownership which Kevin sent to tenants to inform them he was the new owner effective February 1, 2009 and that all rent checks should be made payable to him. It does not appear, however, that the trial court admitted this document into evidence or relied on it to support its conclusion regarding ownership of the Adams property.

18

2013 that "I do not have any interest in the property located at 1722-1734 W. Adams Blvd., LA CA 90018-2701 and do not own that or control of [*sic*] the Adams properties or rents. . . . [¶] My son owns the property at 1722-1734 W. Adams Blvd., LA CA 90018 . . . ." (Bold omitted.)

### b. *Judicial Notice of Kevin's 2008 Deed*

The trial court expressly stated that it was taking judicial notice of the certified copy of the grant deed by which Zelma transferred the Adams property to Kevin. The court found that Kevin was the owner of the Adams property "for the purposes of this hearing." The trial court did not err in taking judicial notice of the deed. "A recorded deed is an official act of the executive branch, of which this court may take judicial notice. (Evid. Code, §§ 452, subd. (c), 459, subd. (a); [citations].)" (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 194.)

### c. *Property Description in Kevin's 2008 Deed*

Kenne argues that the 2008 deed was invalid to vest ownership in Kevin because it contained an incorrect legal description. Kenne, however, presented no admissible evidence that the legal description was wrong, or any legal support for her conclusion that such an error would render Kevin's claims of ownership invalid. As evidence that the description of the Adams property on Zelma's deed to him was proper, Kevin submitted the spousal property order issued when his father, Willie Stennis, died. The order transferred full ownership of various properties, including the Adams property, to Zelma. Comparison of the land description on the 2008 deed from Zelma to Kevin with the description of the land in the spousal property order issued when Kevin's father died shows they are the same.[10] In any event, Kenne offers no evidence showing the

---

[10]     In her reply brief, Kenne repeatedly states that Kevin admitted there were errors in the 2008 deed. Review of Kevin's brief does not reveal any such admission. Kevin states, "[i]f there is a mistake in the draftsmanship of the deed it can be easily corrected . . . ."

description is wrong or otherwise failed to invest ownership in Kevin. "Every argument presented by an appellant must be supported by both coherent argument and pertinent legal authority. [Citation.] If either is not provided, the appellate court may treat the issue as waived." (*Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 743; see also *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

### d. *Fraudulent Transfer of Adams Property*

On appeal, Kenne attacks Kevin as having given a "series of bad faith explanations for the fraudulent transfers." While Kenne could assert fraudulent transfers in opposition to Kevin's third party claim of ownership to the Adams property (see, e.g., *Whitehouse*, *supra*, 40 Cal.App.4th at p. 535), Kenne did not develop this argument in the trial court. Her opposition to Kevin's claim was based primarily on his alleged lack of standing to use the third party claim procedure, and the alleged defect in the 2008 deed. While Kenne referred to "fraudulent transfer" at the hearing, her statements were conclusory in nature.

The trial court did not allow Kenne to call Hatter as a witness. However, the trial court asked Kenne for an offer of proof as to this evidence. Kenne stated the testimony would be used to impeach Kevin's claims regarding collection of rents from the Adams property, and obtaining a loan on the property. Kenne also sought to have Hatter produce documents regarding how the property was reflected on Kevin's tax returns, and documents evidencing payment of taxes and insurance coverage on the property. Kenne asserted these documents would go to the question of "ownership" of the property, but did not argue she wished to produce this or any other evidence to support a claim of fraudulent transfer.

Kenne mistakenly argues that Kevin bore the burden to establish the good faith nature of the transfer. On the contrary, Kenne had the burden to prove fraudulent transfer by a preponderance of the evidence. (*Whitehouse*, *supra*, 40 Cal.App.4th at p. 535.) Kenne's reliance on *Evans v. Paye* (1995) 32 Cal.App.4th 265 to support her argument regarding burden of proof is misplaced. *Evans* did not involve a third party claim

20

governed by section 720.110 et seq.; it concerned entirely different enforcement proceedings under sections 700.040 and 701.010. Those provisions, under certain circumstances, "permit a judgment creditor to levy on amounts owed by a third person to the judgment debtor." (*Evans*, *supra*, at p. 270.) The question in *Evans* concerned "bad faith" denial of a debt by a third party, not a claim of fraudulent transfer interposed to rebut a third party claim of ownership to property subject to a levy. The case is inapposite.

Kenne's conclusory statements were insufficient to establish fraudulent transfer by a preponderance of the evidence. To establish a fraudulent transfer, a party must show the transfer was made when the debtor was insolvent or that the debtor became insolvent as a result of the transfer. (Civ. Code, § 3439.05.) Alternatively, a party must show the debtor made a transfer with actual intent to hinder, delay or defraud, and that the debtor either was engaged or about to engage in a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or the debtor intended to incur or believed or reasonably should have believed that he or she would incur debts beyond his or her ability to pay. (Civ. Code, § 3439.04, subds. (a)(1), (a)(2)(A) & (B).) Kenne proffered no evidence concerning Zelma's insolvency or financial condition resulting from the transfer.

We find substantial evidence supports the trial court's conclusion that Kenne failed to meet her burden of proof that the transfer of the Adams property to Kevin was a fraudulent transfer.[11]

---

[11] Kenne argues as though violations of UFTA were already established. She states: "All UFTA causes of action have been affirmed on two prior appeals filed by co-defendants Ms. Hatter, Mr. Stennis and Mrs. Stennis, since 2009 in these appellate courts," (fn. omitted) citing "Second District Appellate Case Numbers B215859 & B234919." These decisions did not affirm the merit of Kenne's fraudulent transfer causes of action; rather they concerned the trial court's rulings on defendants' special motions to strike under the anti-SLAPP statute. (§ 425.16.) As such, these determinations are not admissible to affect Kenne's burden of proof in the third party claim proceeding. (§ 425.16, subd. (b)(3).)

21

3. Evidence Offered by Kenne

Kenne filed a notice of hearing on the third party claim on May 6, 2013. With her statement in opposition to Kevin's claim, she submitted a preliminary title report for the property to prove ownership of the Adams property in Zelma. Kevin filed a written objection to the preliminary title report as hearsay, lacking foundation and not authenticated. At the hearing on Kevin's claim, the trial court sustained the objection. Kenne contends that the trial court abused its discretion in excluding the preliminary title report and, had the reports been admitted, they would have been sufficient to overcome Kevin's evidence of ownership of the Adams property.[12] We find no error in the trial court's evidentiary ruling.

Kenne presents no argument how she could overcome the foundational, hearsay and authentication objections to these reports. Further, a preliminary title report cannot be relied on as a representation of title. (See *Siegel v. Fidelity Nat. Title Ins. Co.* (1996) 46 Cal.App.4th 1181, 1190 [preliminary title report is not a representation of the condition of title]; see also Ins. Code, § 12340.11 [a preliminary report "shall not be construed as, nor constitute, a representation as to the condition of title to real property"].) Its exclusion, if erroneous, was therefore harmless error. "An evidentiary ruling, even if erroneous, is not reversible absent a miscarriage of justice. [Citations.] '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.]" (*Easterby v. Clark* (2009) 171 Cal.App.4th 772, 783.)

---

[12]     Other than the excluded preliminary title report, Kenne provided no other documentary evidence to rebut Kevin's evidence that he held title to and was the owner of the Adams property.

4.  Due Process and Procedural Issues

Kenne argues the trial court made a variety of procedural and substantive errors which cumulatively resulted in a denial of her right to due process.


   a.  *Right to Full Trial*

Kenne claims she was prejudiced and reversible error occurred when the trial court failed to allow her to conduct a full court trial, including presentation of testimony, proffering of evidence, and examination of her subpoenaed witnesses.  However, as previously discussed, the only trial witness Kenne specifically sought to present at the hearing was Hatter.  Kenne asserted she had served Hatter with a subpoena duces tecum to produce documents.[13]  Testimony by an attorney to a proceeding is disfavored, and should only be allowed when no other means exist to secure the required evidence.  (Cf. *Spectra-Physics, Inc. v. Superior Court* (1988) 198 Cal. App.3d 1487, 1494 ["[t]he practice of forcing trial counsel to testify as a witness, however, has long been discouraged . . . "]); see also *Carehouse Convalescent Hospital v. Superior Court* (2006) 143 Cal.App.4th 1558, 1564-1565 [same; deposition of opposing counsel subject to three-prong test including whether there are other practicable means to obtain the information].)

We find Kenne's due process rights were not violated by the trial court's disallowance of Hatter's testimony.  Kenne made no persuasive showing that the information she sought from Hatter could not be obtained from other means such as a subpoena to Kevin.[14]  Moreover, in her offer of proof, Kenne stated the evidence was offered to impeach statements in Kevin's declaration regarding collection and use of rents

---

[13]    Hatter denies she was properly served with a subpoena.

[14]    In response to the trial court's inquiry why Kenne had not served Kevin with the subpoena duces tecum instead of Hatter, Kenne contended Kevin had been avoiding service, but also admitted she had made no attempt to serve Kevin with the subpoena duces tecum.

23

and payment of taxes on the property. The trial court indicated its view that whether or not rents were collected was not probative on the issue of ownership. Kenne agreed.

It was only after the trial court had ruled, granting Kevin's third party claim, that Kenne asserted she had not been allowed to examine Kevin, and that she had unspecified "undisputable evidence" that the property did not belong to Kevin. On appeal, Kenne also claims she was not allowed to call the Adams property tenants as witnesses. At the third party hearing, prior to the trial court's ruling, Kenne did not make a definite, express request to present documents (other than the properly excluded preliminary title report), or to call Kevin or the Adams property tenants as witnesses. These claims of error are thus forfeited. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2 ["the correct legal term for the loss of a right based on failure to timely assert it is 'forfeiture,' because a person who fails to preserve a claim forfeits that claim"]; *In re Marriage of Turkanis & Price* (2013) 213 Cal.App.4th 332, 353 ["'[p]oints not raised in the trial court will not be considered on appeal'"]; *People v. Clayburg* (2012) 211 Cal.App.4th 86, 93 ["contention is forfeited because appellant did not raise it below"].)

Kenne argues her due process rights were violated when the trial court relied on numerous late-filed documents. Kenne claims the documents had not been served on her, and that she was thereby precluded from responding to the documents or arguments included in the filings. Kenne does not identify any particular document or argument contained in the late filings to which she was unable to respond. Moreover, the trial court specifically based its ruling on the 2008 grant deed and property tax records to support its conclusion that Kevin owned the Adams property. Both the 2008 deed and property tax records had been part of the original claim filed by Kevin. Kenne has not shown that these documents were "new" information contained only in late-filed documents.

### b. *Failure to Require an Undertaking by Kevin*

Section 720.160 sets forth requirements regarding posting of an undertaking by the creditor. Kenne admits she obtained an undertaking, but questions why the court did not also require Kevin to obtain an undertaking. The trial court did not have a duty to require

Kevin to give an undertaking.[15]  Section 720.160, subdivision (a)(1), requires the creditor to file an undertaking with the levying officer and the "levying officer shall execute the writ in the manner provided by law unless the third person files an undertaking to release the property pursuant to Chapter 6 (commencing with Section 720.610)."  Section 720.610 gives the third party discretion to give an undertaking in order to release property to which he or she claims ownership, a right to possession, a security interest or lien, depending on whether it is real property or personal property and whether it has been levied upon under a writ of attachment, writ of execution, or writ of sale.  The two statutory provisions do not mandate that the third party claimant give an undertaking.

   c. *Scheduling of Third Party Claim Hearing and Other Prehearing Rulings*

Kenne contends that the trial court's decision to grant Kevin's third party claim cannot stand because the hearing was not held within 20 days as required by section 720.310, subdivision (c).  She fails to acknowledge, however, that the statute permits the court to continue the hearing beyond that 20-day time "for good cause shown."  Here, the record reflects that there were many reassignments of the case within the trial court which supports a finding of good cause for a continuance.  Kenne also claims she was prejudiced by the delays caused by the transfer of the "entire post-judgment case" from Judge Tarle to Judge Stone before the scheduled 20-day date for a hearing on Kevin's claim.  She claims she was prejudiced when Judge Stone continued the court date to June 21, 2013 because she had to re-serve all five tenants in the Adams

---

[15] At the third party claim hearing, the trial court said:  "The bond that was previously posted by Miss Kenne will also be dissolved and quashed.  There's no reason for the bonds to be pending—under the circumstances—with regard to the Adams property only. . . .  But with regard to the Adams property, there's no need or basis for a bond to be posted because Mr. Stennis being what appears to be the owner of the property, at least for purposes of this hearing today, will be able to act in accordance with what he thinks is appropriate with regard to his own property."

property with subpoenas and was unable to subpoena "other necessary witnesses" because the court kept changing the trial date.

Kenne does not, however, identify witnesses other than the Adams property tenants she sought to, but was unable to, secure as witnesses for the hearing. Nor does the record reflect that the Adams property tenants were unavailable on the hearing date, or that Kenne requested a continuance of the hearing to secure their attendance. Kenne has failed to support a finding of prejudice that that would justify reversing the trial court's ruling.

"[T]he so-called *Watson*[16] standard applies generally to all manner of trial errors occurring under California law, precluding reversal unless the error resulted in a miscarriage of justice." (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801.) The *Watson* standard "may be stated as follows: That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson*, *supra*, 46 Cal.2d at p. 836; see also *Kim v. Konad USA Distribution, Inc*. (2014) 226 Cal.App.4th 1336, 1352.)

Kenne has failed to show that had the 20-day time frame been strictly followed, Kenne would likely have obtained a more favorable ruling on Kevin's third party claim. Kenne's other claims of prejudice regarding the reassignment of the case and delay of the hearing are based on Judge Stone's asserted bias and improper motivations. These claims are wholly speculative and unsupported.

Kenne also broadly contends that the trial court erred because it ignored relevant provisions of the Enforcement of Judgments Law (§§ 680.010-709.030). We reject Kenne's argument in this regard as it is wholly based on the contents of the properly excluded preliminary title report.

---

16      *People v. Watson* (1956) 46 Cal.2d 818.

26

Kenne refers to the "illegal quashing of the SDTS/ORAPS by Judge Stone on May 24, 2013." (Fn. omitted.) Kenne has not cited to the minute order or other order in the record concerning such a ruling, nor presented any argument why the trial court's ruling was erroneous. As previously discussed, contentions without factual or legal support are insufficient to raise an issue on appeal. We treat the issue as forfeited.[17]

Finally, Kenne contends that Kevin filed a false third party claim and that a third party claimant who "defeats an execution levy by filing a false third-party claim is liable for *conversion*." (See *Service v. Trombetta* (1963) 212 Cal.App.2d 313, 316 ["[w]hen the levy of a writ of execution on property owned by the judgment debtor is defeated through the filing of a third party claim which is false, a conversion of the property upon which execution has been levied takes place, independently of whether the third party claimants are acting in good faith"].) Kenne did not prove Kevin's third party claim was false. Even if she had, the issue of Kevin's liability for conversion would not be cognizable within this appeal.

---

[17] Furthermore, in her reply brief, Kenne admits that Judge Stone reversed the order quashing the subpoenas.

## DISPOSITION

The orders are affirmed.  Kevin shall recover his costs on appeal.


STROBEL, J.*


We concur:


PERLUSS, P. J.


ZELON, J.

---